**HECCO VENTURES and Paul O. Koether, Plaintiffs,**

**v.**

**AVALON ENERGY CORP., Tri-South Investments, Inc., and Deltec Panamerica, S.A., Defendants.**

**85 Civ. 2438 (RWS).**

United States District Court, S.D. New York.

April 11, 1985.

Koether Harris & Hoffman, New York City, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., for plaintiffs; Natalie I. Koether, Mathew E. Hoffman, New York City, Herbert E. Milstein, Steven J. Toll, Lisa M. Mezzetti, Washington, D.C., of counsel.

Sullivan & Cromwell, New York City, for defendant Avalon Energy Corp.; Robert J. Katz, David B. Tulchin, Richard R. Howe, Theodore O. Rogers, Jr., Hyman L. Schaffer, David H. Kagan, New York City, of counsel.

Weil, Gotshal & Manges, New York City, for defendant Tri-South Inv., Inc.; Dennis J. Block, Nancy E. Barton, Joseph S. Allerhand, Sanford F. Remz, Marjorie L. Cohen, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs Hecco Ventures ("Hecco") and Paul O. Koether ("Koether") (collectively "Hecco") brought this action on March 29, 1985 charging defendants Avalon Energy Corp. ("Avalon"), Tri-South Investments Inc. ("Tri-South") and Deltec Panamerica S.A. ("Deltec") with violations of the Securities Exchange Act of 1934 in connection with the solicitation of proxies by the boards of directors of Avalon and Tri-South for approval of the merger of Tri-South with and into Avalon, as well as certain other violations of state law. By order to show cause, Hecco moved this court for a preliminary injunction enjoining the April 15, 1985 meeting of the shareholders of Avalon and Tri-South to vote on the proposed merger. Expedited discovery was conducted and a hearing on the motion was held on April 10, 1985. For the reasons set forth below, Hecco's motion for a preliminary injunction is denied.

**The Parties**

Hecco is a California limited partnership whose general partners are Cinerama, Inc., a New York corporation, and James J. Cotter, Ltd., a limited partnership whose sole general partner is James J. Cotter. It presently owns approximately 187,400 shares of Tri-South common stock. Koether is a resident of Far Hills, New Jersey. He presently owns approximately 50,000 shares of Tri-South common stock.

Avalon was incorporated in Maryland in 1984, and is a successor to CMT Investment Company, a California corporation incorporated in 1980. Avalon's principal executive offices are located in New York. Avalon owns mortgages and equity interests in real properties and is in the process of redeploying certain of its assets into the domestic energy business.

Tri-South, incorporated in Georgia in 1980, is the successor to Tri-South Mortgage Investors, a Massachusetts business trust. Tri-South's principal executive offices are located in Atlanta, Georgia. Tri-South is engaged in the acquisition, ownership, management, development and sale of real properties and the administration of its mortgage loan portfolio.

Deltec is a corporation organized under the laws of Panama with its principal office in Nassau, Bahamas. As of March 12, 1985, Deltec was the beneficial owner of

33.6% of Avalon's common stock, 60.2% of Avalon's preferred stock, and 41.4% of Tri-South's common stock. The president of its wholly-owned subsidiary, Deltec Securities Corporation (a New York based securities brokerage firm), Arthur E. Byrnes ("Byrnes") is chairman of the board of Avalon and has been a director of Tri-South since October 1983. Although Deltec is named as a defendant, it has not been served.

As of March 12, 1985, four of Avalon's eight directors, including its chairman of the board, Byrnes, and its president Howard A. Knight ("Knight") were directors of Deltec. This includes Joseph G. Cacioppo ("Cacioppo") who is also executive vice president of Deltec and president of the Deltec Banking Corporation Limited, a wholly-owned subsidiary of Deltec. As of March 12, 1985, three of Tri-South's ten directors, Byrnes, Cacioppo and Knight, were directors of Avalon and Deltec.

## The Facts

In 1983 Tri-South filed a complaint against Deltec alleging certain securities act violations. The dispute was resolved shortly thereafter and the complaint withdrawn. In August 1984 Avalon initiated discussions with Tri-South concerning a potential merger between Avalon and Tri-South. On October 18, 1984, after negotiation, the boards of directors of Tri-South and Avalon unanimously approved a merger in principle, subject to the preparation of a definitive agreement, the receipt of fairness opinions from independent investment banking firms and various other conditions. The terms of the proposed merger were that Tri-South would be merged with and into Avalon which would be the surviving corporation, and that holders of outstanding Tri-South shares (other than Avalon) would be entitled to receive 1.18 shares of Avalon for each share of Tri-South held by them.

On January 11, 1985, the definitive merger agreement was unanimously approved by Avalon's board of directors, and on January 18 Tri-South's board also unanimously approved the agreement, immediately following which it was executed and delivered. Each company was advised by its investment banker (Kidder, Peabody & Co. Incorporated for Avalon and Robinson Humphrey/American Express, Inc. for Tri-South) that the merger agreement was fair to the respective shareholders of each company from a financial point of view. The fairness advice given by the independent investment banking firms, initially oral, was later confirmed by their written opinions.

Commencing March 15, Avalon and Tri-South distributed a joint proxy statement to their shareholders, which Hecco now charges constitutes a violation of the securities laws (the "Proxy Statement"). Included as exhibits are the text of the merger agreement, the fairness opinions of the investment bankers, and the text of the proposed amended and restated Avalon Articles of Incorporation which its shareholders are being asked to approve as a predicate to their acting on the merger proposal. The Proxy Statement advises that each company will hold a shareholders' meeting on April 15 to vote on these matters.

The Proxy Statement also states that the Avalon directors and seven other Avalon shareholders own 20.1% of Avalon's common and preferred stock which they intend to vote in favor of the merger. When added to Deltec's Avalon ownership, 63.3% of the shares are committed to the merger, and the affirmative votes of only an additional 3.4% of Avalon's outstanding common and preferred stock will be needed. Taking into account the 41.4% of Tri-South's outstanding shares owned or controlled by Deltec, the affirmative votes of an additional 8.6% of the common stock of Tri-South will be necessary.

According to the defendants, on January 4, 1985 plaintiff Koether met, at his request, with Knight and Byrnes, each of whom serves as a director of Avalon, Tri-South and Deltec. At that meeting, the defendants claim, Koether stated that he and an unidentified group of Tri-South stockholders for whom he professed to speak, and who collectively held nearly 5%

of the outstanding Tri-South shares, were opposed to the proposed merger. He offered to purchase all Tri-South shares held by Avalon and Deltec, at $7.25 per share. In the alternative, he demanded that he and his group be bought out for $7.25 per share. Tri-South's common stock closed on the New York Stock Exchange that day at $6.125. According to the defendants, Knight and Byrnes refused to meet Koether's terms.

## Conclusions

The complaint and the motion for preliminary injunction allege violations of section 10(b), 14(a) and 20(a) of the Exchange Act, Section 11 of the Securities Act of 1933, and breach of fiduciary duty. In particular, Hecco contends that the Proxy Statement fails to make full and accurate disclosure of the active trading pattern of Deltec in the common stock of Avalon and the effect of this trading on the exchange rate and market price of Avalon's shares, the degree to which Avalon, Tri-South and Deltec are intertwined, the nature of the relationship between Avalon, Deltec, and The Moonie Oil Company, Ltd. ("Moonie"), the true reasons for the merger, the actual financial position of Avalon, the true purposes of the proposed amendments to Avalon's Articles of Incorporation, and the basis of the analysis done by Tri-South and Avalon's investment bankers.

## The Applicable Standard

■ To prevail on a motion for a preliminary injunction, a plaintiff must demonstrate 1) that he will suffer irreparable harm if the transaction takes place, and either 2) that he is likely to succeed on the merits, or 3) that he has raised sufficiently serious questions going to the merits and that a balance of hardships tips decidedly in favor of equitable relief. *See, e.g., Mitchell v. Cuomo,* 748 F.2d 804, 806 (2d Cir.1984); *Norlin Corp. v. Rooney Pace, Inc.,* 744 F.2d 255 (2d Cir.1984). Injunctive relief is "an extraordinary and drastic remedy which should not be routinely granted", *Medical Society of New York v. Toia,* 560 F.2d 535, 538 (2d Cir.1977), and the plaintiff seeking such relief bears a heavy burden of proof. *See, e.g., State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750 (2d Cir.1972).

Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), prohibits the making of any statement in connection with a proxy statement "which, at the time and in the light of the circumstances under which it is made, is false and misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading...." SEC Rule 14a–9(a), 17 C.F.R. § 240.14a–9(a).

The standard of materiality in the proxy disclosure context has been stated in *TSC Industries v. Northway Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976):

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ... Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

In determining the likelihood of Hecco succeeding on its underlying claims, each of the various misstatements and omissions alleged by Hecco must be evaluated in the light of the cited authorities.

## 1. Deltec's Transactions in Avalon's Common Stock

Hecco contends that the Proxy Statement is misleading because it fails to disclose the active trading pattern of Deltec in the common stock of Avalon. Hecco asserts that from October 1984 through February 26, 1985, Deltec purchased at least 33,870 Avalon common shares, approximately 41.85% of all Avalon common shares purchased for the period, and that between January 1, 1985 and February 26, 1985 the Avalon common shares purchased by Deltec represented approximately 71%

of all Avalon common shares purchased.[1] Although Deltec's holding of Avalon stock was disclosed, the details of these purchases were not. Hecco contends that these purchases represent a concerted program by Deltec to support the market price of Avalon's common stock at a time when Avalon's financial position was deteriorating and claims that the consistent level of the market price of Avalon's common stock during this period is proof of Deltec's manipulations.[2]

According to Hecco "the exchange ratio which was originally announced in October 1984 could not possibly remain the same given Avalon's deteriorating financial condition and Tri-South's improving financial condition were it not for the active buying by Deltec, Avalon's controlling shareholder, of Avalon's stock" (Plaintiff's memorandum at 7) and without Deltec's support, "it may be reasonably anticipated that the price of Avalon stock will tumble." (*id* at 3). Further, Hecco suggests that this trading activity affected the market price of Avalon shares as of March 13, 1985, the price disclosed in the proxy statement. For these reasons, Hecco claims a material omission in the failure to disclose the details of Deltec's trading in Avalon shares.

■ Of course, Deltec's purchases were disclosed in Deltec's Schedule 13–D filings and no SEC rule or regulation has been cited requiring disclosure of the timing and amount of Deltec's purchases and the Proxy Statement does quantify Deltec's record-date positions in Tri-South and Avalon in accordance with SEC Schedule 14A and Regulation S–K. (Proxy Statement at cover page and pp. 3, 6–7, 15–17). The issue presented, therefore, is the factual question of materiality in view of the total mix of information available. *TSC Industries v. Northway, Inc., supra*, 426 U.S. at 449, 96 S.Ct. at 2132 (1976).

■ However, Hecco has failed to demonstrate that Deltec's purchases had any impact on the price of Avalon stock. Hecco's own expert witness, George Sozek ("Sozek"), testified that he saw no specific pattern to the trading by Deltec between October 1984 and February 1985. Although Deltec's trades overall constituted approximately 40% of the sales during this period, presumably as reported in the pink sheets, Sozek stated that the market price of Avalon shares remained stable throughout the entire period and was unable to attribute any effect on the price of Avalon common shares to Deltec's purchases during the period. The Avalon market price remained stable even following the release of information as to Avalon's unfavorable fourth quarter results. There was no evidence presented to connect this stability with the Deltec purchases. Hecco speculates that the reason Avalon's stock did not fall following the release of these results was Deltec's manipulation of its price. However, Deltec last traded Avalon's shares on February 26, six days after the release of these figures. Between February 26 and March 13, the date on which the stock price reported in the Proxy is based, the price of Avalon common stock actually rose. As of April 4, the closing asking price was 1/8 point higher than the price paid on February 26. The fall in price which Hecco stated would follow if Deltec ceased purchasing Avalon stock has yet to materialize.

Based on the evidence submitted, Hecco has failed to prove that Deltec's purchases

1. There is a suggestion that Deltec's 13–D filings setting forth the purchases may not be complete, but no evidence is offered to buttress this suggestion.

2. The Hecco claim that the exchange ratio for Avalon and Deltec stock was adversely affected by Deltec's purchases between August and October has not been pressed in view of the fact that only 700 shares were involved. Further, the Proxy Statement indicated that stock market values were one factor that was considered in setting the exchange rate and stated that:

> While market capitalizations were not a primary consideration, the exchange rates closely approximates the relative average market values of the two companies for the 60 trading days immediately preceding the announcement of the merger on October 18, 1984.

Proxy Statement at p. 8.

were a material factor affecting the market price of Avalon's stock at any time. There is no basis, therefore, for requiring the disclosure of these purchases.

**2. Relationships Between Deltec, Tri-South and Avalon**

■ Hecco contends that the Proxy Statement fails to fully disclose the degree of involvement between the management of Deltec, Tri-South and Avalon, the so-called "web." It claims that the statement "falsely describes certain Tri-South officers and directors as independent" and suggests that the Proxy Statement should have disclosed the existence and history of certain agreements between Tri-South and Deltec that were entered into following the conclusion of the lawsuit brought by Tri-South against Deltec in 1982 and the details of the controlling interests and management of Deltec.

The Proxy Statement makes certain disclosures concerning the interests and relationships of the Tri-South and Avalon officers and directors with Deltec and each other, *see* Proxy Statement at pp. 7, 10–11, 12–13, 28, 40–41, and explicitly states that "By reason of its substantial stock ownership and representation on the Boards of Directors of Avalon Energy and Tri-South, Deltec may have the ability to control both companies." (Proxy Statement at 7). The Proxy Statement thus discloses that in January 1985, Howard Knight, who has been president and chief executive and a director of Avalon since June 1984, was elected a director of Deltec.

' However, Hecco points to the failure to disclose that, as he testified at his deposition, Knight had acted as a consultant to Deltec since April of 1984 and in the capacity of a managing director of Deltec since August of 1984. This failure to disclose fully the time at which Knight's involvement with Deltec began was a significant omission but does not constitute a material omission, given the "total mix" of information provided. Taken as a whole, the Proxy Statement set out the nature and extent of the relationship between Avalon,

Tri-South and Deltec and the degree to which Deltec might be able to control Avalon after the proposed merger. While the complete disclosure of Knight's role as a Deltec consultant during the Avalon/Tri-South negotiation and during the period in which the Avalon board decided to invest in the Deltec Energy Fund, a fund administered by Knight, might have been advisable, it is not so significant that a reasonable stockholder would consider it important in deciding how to vote, even given the obvious interest and significant position of Deltec throughout.

■ As to the agreements arising out of the litigation between Deltec and Tri-South, Hecco has not succeeded in proving that this information was material. The two successive agreements that constituted and followed the settlement of the lawsuit Tri-South commenced against Deltec and the termination nearly a year ago of the successor agreement, were contemporaneously disclosed to Tri-South shareholders in Deltec's various pertinent 13D amendments, which included copies of the two agreements and the termination agreement themselves. (See Byrnes Aff. ¶ 4 and Exh. B). The litigation was settled two years ago, and the resulting agreements were terminated nearly one year ago and have no continuing operating effect. While Hecco's desire to have Tri-South's earlier negative opinion of Deltec prominently disclosed is understandable, there is no reason why the prior position of Tri-South's management, briefly held and abandoned, should affect a reasonable shareholder's decision.

■ Hecco also argues that the Proxy Statement should have more fully disclosed the interests and individuals who control Deltec. However, Hecco has supplied no authority for the proposition that a proxy statement must disclose not only the entity having a significant interest in the two parties to a proposed merger but also the stockholders or controlling interests of that entity. There was no requirement that the Proxy Statement do more than set forth the relationship between Avalon, Tri-South and Deltec and no evidence that such a

disclosure would affect the decision of the Tri-South shareholders. Although Hecco is undoubtedly frustrated by the veil produced by Deltec's off-shore incorporation and management, that characteristic is fully disclosed. The Proxy Statement adequately discloses the extent of Deltec's involvement with the proposed merger, and Avalon and Tri-South need not have set forth any additional information about Deltec's management or owners.

### 3. Relationships Between Avalon, Deltec and Moonie Oil

Hecco argues that the Proxy Statement misrepresents the relationship between Avalon and Moonie Oil. The Proxy Statement explains that the relationship between the companies arose from Avalon's acquisition of a substantial number of shares of Moonie Oil stock from seven Moonie Oil shareholders, the simultaneous purchase by those Moonie Oil shareholders of a substantial number of Avalon shares from Avalon, and an exchange of board of directors representation between the two companies, and states that the companies viewed their relationship as long term. (Proxy Statement at p. 24). Hecco challenges the accuracy of this statement as the basis of the fact that earlier this year Avalon filed a shelf registration statement with the SEC covering the Avalon shares that Avalon had conveyed to the seven Moonie Oil shareholders. Hecco also suggests that certain undisclosed agreements exist between Moonie Oil shareholders and Avalon by which these shareholders assigned their Avalon shares to Deltec.

Hecco has failed to prove that the failure to mention this shelf registration in the Proxy was a material omission. The shelf registration to be kept in effect for three years was filed by Avalon pursuant to its undertaking to each of the Moonie Oil shareholders, contained in the letter agreements pursuant to which the Avalon shares were transferred to them in the first place. There was no showing that the shelf registration was related to the merger or resulted from any known intention of any of the

Moonie Oil shareholders in fact to dispose of any of their Avalon shares in a fashion to effect the merger. (Knight Aff. ¶ 7 and Exh. B).

As to the purported agreement between Moonie Oil shareholders and Avalon relating to an assignment to Deltec, Hecco has failed to refute Avalon's assertion that no such agreements exist.

### 4. Other Alleged Non-disclosures and Misrepresentations

The remaining claims made by Hecco in its complaint and motion papers were not raised at oral argument and need only be discussed briefly.

Hecco asserts that "the reasons for the merger are falsely portrayed ... as, in part, benefitting the Tri-South shareholders by giving them the opportunity to diversify their investment into the energy business" (Cplt. ¶ 33a). They charge that the "true undisclosed reason" for the merger is to shore up the "worsening financial condition" of Avalon by using Tri-South's cash and assets (*id.* )

Hecco has failed to provide a factual basis for its accusation that pertinent sections of the Proxy Statement, such as the discussion of the "Background of and Reasons for the Merger" and the "Business of the Surviving Corporation" set forth at pages 8–10 and 11–12, are in any respect false or misleading. The only purported basis for this conclusion is Hecco's lawyers' expressed opinion that the reasons for the merger set forth in the proxy statement "make no sense" because it is to them "incomprehensible" that Tri-South would wish to invest in the currently undervalued energy marked (plaintiff's memorandum at 5–6). This claim is no more than an attempt by Hecco to substitute its business judgment for the Tri-South directors' as to the direction the company should take.

Furthermore, the basis of its assertion that Avalon's financial situation is "worsening" are those earnings results disclosed in the proxy statement itself. Even assuming that Avalon's financial position was deteriorating, there was no need for

the parties to the merger to disclose that the merger would result in Avalon's obtaining the benefit of Tri-South's assets. Avalon fully disclosed its financial picture, and a reader could easily determine that one of the advantages of this deal might be that Avalon would gain additional assets. *See Richland v. Crandall*, 262 F.Supp. 538, 554 (S.D.N.Y.1967) ("corporations are not required to address their stockholders as if they were children in kindergarten."). Nor is there any duty to disclose Hecco's pejorative characterizations of the merger. *See Rodman v. Grant Foundation*, 608 F.2d 64, 71 (2d Cir.1979). The material facts were disclosed, and the parties had no obligation to offer additional speculations as to why the merger might be considered particularly attractive from the perspective of Avalon.

In its complaint, Hecco also asserts that the Proxy Statement "fails to disclose the fourth quarter [1984] financial results of Avalon." (Complaint ¶ 35). Similarly, its brief asserts that the Proxy Statement "makes only a vague reference to Avalon's fourth quarter results" and that "there is no disclosure in the Joint Proxy Statement of Avalon's poor fourth quarter financial results" (Pl.Mem. at 7, 8). However, the fourth quarter results of both Avalon and Tri-South are disclosed in their respective financial statements, at pages 77 and 96 of the Proxy Statement. Moreover, Avalon's fourth quarter earnings results are specifically mentioned in the "Management Discussion" section which states that "[t]he trend toward lower operating income is expected to continue for the near future." (Proxy Statement at p. 23).

Hecco also claims that the Proxy Statement fails to accurately disclose the purpose and intent of the proposed amendments to and restatement of Avalon's Articles of Incorporation. Annex D to the Proxy Statement sets forth the full text of the proposed amended and restated Articles of Incorporation of Avalon, which its shareholders are being asked to adopt prior to and as a predicate to voting on the proposed merger. The operation and potential consequences of the proposed charter amendments, including possible impacts on efforts to influence or change control over the corporation, are discussed at length (Proxy Statement at pp. 45–56). Hecco has not pointed to a single inaccuracy in the discussion of the reasons for and potential effects of the proposed charter amendments. Moreover, even if the purported ill motives of "locking up" and entrenching Deltec's control lay behind the proposals, there would be no resulting disclosure duty. *See Rodman v. Grant Foundation, supra* 608 F.2d at 71.

Hecco alleges that the Proxy Statement "fails to disclose that the equity reported on Avalon's Oklahoma joint venture is likely to be substantially, if not entirely, written off" (*See* Cplt. ¶ 33g, Pl.Mem. at 8). The only support that Hecco offers for this allegation is the argument that the funds internally generated by the joint venture will allegedly be insufficient to pay off $12 million in debt due in 1986. As the defendants point out, however, this is a speculative assertion, since other possibilities for satisfying debt, such as injection of external funds, refinancing of the loan, or sale of the underlying property, are numerous. More important, Hecco has failed to challenge any specific elements of the discussion of the Oklahoma joint venture in the text of the Proxy Statement. The financial results of the Oklahoma joint venture and the debt due in 1986 are set forth in footnote 3 to Avalon's financial statements (Proxy Statement at pp. 67–68). The Proxy Statement includes sufficient information so that the individual shareholder could exercise his own judgment concerning the venture and Hecco has failed to establish any material omission.

Finally, Hecco contends that the Proxy Statement fails to disclose what analysis of a possible liquidation of Tri-South was done by Robinson Humphrey/American Express in connection with the Proxy Statement. It argues that the Proxy Statement should have disclosed any independent asset appraisals provided to Robinson Humphrey in connection with its analysis of the fairness of the merger and in addition should have

stated what Tri-South shareholders could have expected to receive in a liquidation of Tri-South's remaining real estate assets as opposed to what they will receive in the merger.

Robinson Humphrey/American Express was retained for a fixed fee by the Tri-South board, as an independent investment banker, to render an opinion on the fairness of the merger to Tri-South shareholders from a financial point of view. The Proxy Statement states that "[t]he Tri-South Board of Directors also considered the uncertainties of being able to realize fair value for the remaining Tri-South real estate assets in a liquidation and were advised that Robinson Humphrey/American express had considered the alternative of a liquidation in reaching that firm's conclusion that the Merger was fair to the Tri-South shareholders." (Proxy Statement at 9).

The above statement constitutes adequate disclosure. In certain rare situations courts have required the disclosure of such "soft" information or asset valuations, *see Flynn v. Bass Brothers Enterprises, Inc.,* 744 F.2d 978, 988 (3d Cir.1984) (laying out factors to be considered). A consideration of the factors relevant to such a decision, however, reveals that this is not a case in which such speculative disclosure should be required as it would be neither relevant nor material. *See South Coast Services Corp. v. Santa Ana Valley Irrigation Co.,* 669 F.2d 1265, 1271 (9th Cir.1982). Nor was there any need for the defendants to have engaged in speculation as to the possible liquidation value of Tri-South. *Id.*

█ Hecco has failed to meet its burden of proving probable success on any of its claims. In addition, it has failed to raise sufficiently serious questions going to the merits of the case. With respect to irreparable harm, the defendants have not advanced any particularized harm that would result from enjoining the proposed merger other than the expense and difficulty that would result from additional mailings and delay and, more significantly, the harm arising from a conclusion that a company

has violated the securities laws. However, in light of the fact that Hecco has been unable to meet the required showing for a preliminary injunction, its motion is denied.

IT IS SO ORDERED.