William J. JOYCE, Bernice Riley Joyce, Mary Joyce Hammond, William J. Joyce, Jr., Dorothy Ann Joyce, Catherine Joyce McManus, Paul McManus, Jill Joyce Kasselman and Judith Joyce Lang, Plaintiffs-Appellants,

v.

JOYCE BEVERAGES, INC., John M. Joyce and William J. Collier, Defendants-Appellees.

No. 255, Docket 77–7262.

United States Court of Appeals, Second Circuit.

Argued Nov. 2, 1977.

Decided Jan. 30, 1978.

---

Donald E. Egan, Chicago, Ill. (Katten, Muchin, Gitles, Zavis, Pearl & Galler, Chicago, Ill., Lee Ann Watson, Chicago, Ill., on the brief, Chadbourne, Parke, Whiteside & Wolff, New York City, of counsel), for plaintiffs-appellants.

Michael Lesch, New York City (Shea, Gould, Climenko & Casey, Lillian S. Weigert, New York City, of counsel), for defendants-appellees.

Before FRIENDLY, HAYS and OAKES, Circuit Judges.

HAYS, Circuit Judge:

Plaintiffs-appellants appeal the dismissal of their complaint in an action brought under § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (1976), and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1977).

The complaint alleged that an "Information Statement" that accompanied a proposed exchange of stock contained various material omissions and misrepresentations. The defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted and for failure to plead with particularity the circumstances constituting the fraud. The district court granted the motion. *Joyce v. Joyce Beverages, Inc.,* 430 F.Supp. 676 (S.D.N.Y.1977).

We find that the complaint sufficiently complies with the requirements of Fed.R. Civ.P. 9(b), and therefore proceed to a consideration of the other alleged deficiencies.

The plaintiffs are William J. Joyce and the members of his immediate family: his wife, children, and son-in-law. In March of 1973, they owned a large block of the stock of four companies ("Operating Companies") engaged in the business of bottling Seven-Up and other soft drinks. The defendants

are John M. Joyce, William J. Collier, and Joyce Beverages, Inc. ("JBI"). John M. Joyce was the Chairman of the Board of the New York Operating Company. He is now the Chairman of the Board of JBI. William J. Collier, who formerly served as the personal attorney of William J. Joyce, is a director of JBI and also serves as its General Counsel. As General Counsel, he was responsible for the legal matters relating to the preparation of the documents used in the instant transaction. JBI is a Delaware corporation that was formed to serve as a holding company for the four Operating Companies. The complaint alleges that John M. Joyce and William J. Collier, together with John M. Joyce's immediate family and another, own and at all relevant times have owned not less than 47.56% of the outstanding stock of JBI, that they have controlled a majority of the board of directors of JBI, and that they have acted in concert so that they hold a controlling interest in the company.

A plan was developed to reorganize and consolidate the four Operating Companies through the device of a holding company. As noted above, JBI was formed for this purpose. Pursuant to this plan, JBI proposed to the stockholders of the Operating Companies that they exchange their stock for shares of JBI. The offer was made by mail. The package sent to each shareholder included a letter containing the offer, an Agreement and Plan of Reorganization setting out the terms of the exchange, and an "Information Statement." The Information Statement was a lengthy, wide-ranging disclosure document akin to the form of proxy statement outlined in Schedule A, Item 14, which is required when § 14 of the Securities Exchange Act is applicable. In response to this offer, plaintiffs exchanged their shares in the Operating Companies for JBI stock. According to the complaint, they now hold 37% of the outstanding stock of JBI.

All of the companies involved in this case have at all times been privately held. The four Operating Companies were incorporat-

ed in Illinois; JBI is a Delaware corporation. It is not disputed that the New York Operating Company was the weakest of the four. Nor is it disputed that this fact was adequately disclosed.

## I

The complaint charges that there were three materially misleading statements in the Information Statement:

1. The first section of the statement delineated the reasons for the proposed consolidation. Essentially, it stressed the operating economies that would result from the consolidation of the four companies. It also stressed that the consolidation would produce a financially stronger entity that would be in a better position to obtain financing.

The plaintiffs allege that the real purpose of the consolidation was to benefit defendants' New York company, which, as everybody knew, was the weakest financially. They allege that the plan was to have JBI float loans to the New York company out of the funds generated by the other Operating Companies, "all to the detriment of the Operating Companies other than New York."

2. The Information Statement contained a section explaining that the exchanged JBI shares could not be resold since they had not been and would not be registered. *Inter alia,* it advised that Rule 144, 17 C.F.R. § 230.144 (1977), would allow resale if its terms were met, and that the stockholders should consult their investment advisors about the availability of Rule 144. Plaintiffs claim that this statement was misleading in that it implied that a Rule 144 exemption might be available when defendants knew that was not so.

3. As noted above, the Operating Companies were Illinois corporations; JBI is incorporated in Delaware. The Information Statement described certain changes in stock rights effected by this changeover: the loss of preemptive rights [1] and the dis-

1. The Illinois Business Corporation Act, *Ill. Ann.Stat.* ch. 32 § 157.24 (Smith-Hurd, Supp.

1977), recognizes the stockholders' common law preemptive right, *see Elward v. Peabody*

continuance of cumulative voting.[2] Plaintiffs claim that by listing some but not all of the changes, defendants misled them. Specifically, they claim that defendants should have included the fact that: several types of stockholder approval votes could be effected by simple majorities instead of two third votes as under Illinois law; [3] vacancies on the Board of Directors could be filled by the vote of the remaining directors instead of the stockholders; [4] certain appraisal rights would be lost; [5] and, under Delaware law, JBI's officers and directors would have broader rights of indemnification.

The district court held that, as a matter of law, none of these alleged misrepresentations or omissions was material. It understood the first claim to allege that the weakness of the New York company, and the fact that it stood to benefit by obtaining loans, was not adequately disclosed. The court held that it was not fraudulent to fail to say that the weakest company would benefit from the consolidation. It did not find anything misleading about the Rule 144 statement. With regard to the changes in stockholders' rights resulting from the

change in states of incorporation, it held that the defendants' duty to disclose was discharged by the disclosure of the change-over and the inclusion of the names of the states involved. 430 F.Supp. at 678.

While we agree with the district court's conclusions as to the first claim, we cannot go along with its views as to the materiality of the second and third claims.

## II

On this motion to dismiss for failure to state a claim, plaintiffs' allegations must be accepted as true and must be read in the manner most favorable to them. This is especially true when dealing with questions of materiality which, since they are "mixed questions of law and fact," require

> delicate assessments of the inferences a "reasonable shareholder" would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact.

*TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 450, 96 S.Ct. 2126, 2133, 48 L.Ed.2d

---

*Coal Co.,* 9 Ill.App.2d 234, 132 N.E.2d 549 (1956), to share pro-rata in any new issue of corporate stock so that their interest in the corporation will not be diluted. Delaware does not recognize such a right. *See Del.Code* tit. 8 §§ 157, 161 (1975).

2. The Illinois act makes cumulative voting mandatory, *Ill.Ann.Stat.* ch. 32 § 157.28 (Smith-Hurd 1954); under the Delaware act it is permissive. *Del.Code* tit. 8 § 214 (1975). If cumulative voting is not provided for in the certificate of incorporation, each shareholder is only entitled to one vote for each share that he holds. *Id.* § 212.

3. Under Delaware law, the certificate of incorporation may be amended by a majority vote of the stockholders. *Del.Code* tit. 8 § 242(c)(1) (1975). Under Illinois law, a two thirds vote is required. *Ill.Ann.Stat.* ch. 32 § 157.53(c) (Smith-Hurd, Supp.1977). The same is true with regard to approval votes for mergers and consolidations, *compare Del.Code* tit. 8 § 251(c) (Supp.1976) *with Ill.Ann.Stat.* ch. 32 § 157.64 (Smith-Hurd 1954), and for dissolutions or sales, leases, exchanges, mortgages, or pledges of all or substantially all of the assets of the

corporation. *Compare Del.Code* tit. 8 § 271(a) (1975) *with Ill.Ann.Stat.* ch. 32 § 157.76(c) (Smith-Hurd 1954).

These differences are of practical import in the instant case. The complaint alleges that, together, the plaintiffs owned more than one-third of the stock of each Operating Company. This gave them an effective veto of any proposed merger, dissolution, or amendment of the charter. They lost this power when they exchanged their stock for stock in JBI, a Delaware corporation.

4. *Del.Code* tit. 8 §§ 142(e), 223(a) (1975). *Compare Ill.Ann.Stat.* ch. 32 § 157.36 (Smith-Hurd 1954).

5. In the event of a sale or exchange of substantially all of the assets of a corporation, the Illinois act provides for appraisal rights for the dissenting shareholders. *Ill.Ann.Stat.* ch. 32 § 157.73 (Smith-Hurd, Supp.1977). The same is true in the event of a merger or consolidation. *Id.* § 157.70 (Smith-Hurd, Supp.1977). The Delaware act provides for appraisal only in the event of a merger or consolidation. *Del. Code* tit. 8 § 262 (Supp.1976), not in the event of sale or exchange.

757 (1976).[5] The issue on this Rule 12(b)(6) motion is whether the plaintiffs can prove any set of facts that, had they been disclosed, would have been considered by the reasonable shareholder to have "significantly altered the 'total mix' of information made available." *Id.* at 449, 96 S.Ct. at 2133.

We cannot say that this is not the case with respect to the second and third claims here.

The statements about the availability of Rule 144 and the omissions regarding Delaware law raise substantial issues. The statement about the potential availability of Rule 144 could have misled the reasonable shareholder into thinking that it was, in fact, available to him. Similarly, the discussion of the loss of preemptive rights and the discontinuance of cumulative voting as a result of the changeover to Delaware law, could have misled him into thinking that the changeover did not otherwise affect his rights.

### III

Of course, we intimate no views on the merits of this case. It may develop that plaintiffs cannot demonstrate to the trier of fact that the reasonable shareholder would have been misled. It may develop, once discovery has begun, that the plaintiffs actually knew or could not have cared less about the very facts that they claim were misrepresented. We stress only that the difficult question of materiality should not ordinarily be disposed of on a Rule 12(b)(6) motion.

Accordingly, we reverse and remand for further proceedings not inconsistent with this opinion.

OAKES, Circuit Judge (dissenting):

I most respectfully dissent.

I agree with Judge Pollack below that none of the asserted omissions or representations is sufficiently material to avoid dismissal. I shall deal *seriatim* with the three statements alleged to be misleading.

First, the representation that a purpose of the consolidation was to permit financing to be obtained more easily and at lower cost is not a representation that the stronger companies' excess funds would not be used to strengthen the financial position of the New York Operating Company. Any consolidation implies to a reasonable stockholder, it seems to me, that there will be intercorporate loans, quite likely from the stronger to the weaker entities of the consolidation. Excessive lending, charging an unreasonably low rate of interest or imperiling the stronger corporation's capital may give rise to a state cause of action for waste of assets or for mismanagement. However, as the majority and I agree, the omission to state that there will be such lending does not rise to the level of a 10b–5 claim.

Second, the reference to Rule 144, surely a boilerplate provision in the Information Statement, presents a somewhat closer question, but the statement issued did say that the shares of JBI "must be held indefinitely unless they are subsequently registered under the Act or an exemption from such registration is available." That was true, and it was followed by another true statement that Rule 144 permits resale of restricted shares in limited quantities after a holding period of two years "in accordance with the terms and conditions of that Rule." To my mind this language would put a reasonable shareholder on notice that unless "that Rule" were subsequently complied with,[1] he would have to hold them "indefinitely."

---

6. *TSC Industries* dealt with the standard of materiality under § 14(a) of the '34 Act, 15 U.S.C. § 78n(a) (1971). However, it is generally agreed that the same standard applies under § 10(b). *See Goldberg v. Meridor,* 567 F.2d 209, 218–219 (2nd Cir. 1977). This seems correct as a matter of statutory interpretation since the statutes are *in pari materia.* As a matter of policy, the *TSC* standard is

particularly appropriate in this case since it involves an Information Statement much akin to a proxy statement in a merger vote.

1. Compliance with Rule 144 is no simple matter. Under the rule, a seller of restricted securities will not be deemed a Section 2(11), 15 U.S.C. § 77b(11), underwriter, if *inter alia,* in addition to holding the securities for the requi-

Finally, the reference to Delaware as the state of JBI's incorporation and to two Delaware corporate law provisions particularly burdensome on these minority stockholders—relating to lack of preemptive rights and unavailability of cumulative voting— was factually accurate. Such a reference should have alerted even the most unsophisticated stockholder to the possibility that Delaware law had additional, perhaps more esoteric traps for the unwary which, to avert, might well require advice of counsel. But I should have thought that it has long been a matter of common knowledge to the business world generally that Delaware's corporation law quite generally favors management and controlling interests, and disfavors minority stockholders. To my knowledge, the SEC has not yet required merger information or proxy statements to bear a sticker warning against the laws of Delaware. More to the point, perhaps, no allegation in the complaint indicates that any of the Delaware laws *not* mentioned in the Information Statement here have in some way been utilized by the controlling interests adversely to those of appellants.

I suspect that the proof may show that appellants received poor legal advice when they went into the exchange of stock. This might give them a state cause of action for negligence or other breach of fiduciary duty if, since allegedly their attorney benefited from the transaction, indeed, appellants have suffered loss. But I agree with Judge Pollack that the Information Statement does not give rise to a cause of action under federal securities law, and accordingly would affirm.

site period, 17 C.F.R. § 230.144(d), and to complying with the applicable limitation on the amount of securities which may be sold, *id.* § 230.144(e), the issuer has made available adequate current public information with respect to itself. The issuer may satisfy the information requirement in either of two ways. It must have securities registered under either the Securities Exchange Act of 1934 or the Securi-

ties Act of 1933, thereby making itself subject to the reporting requirements of Sections 13 and 15(d) respectively of the 1934 Act, 15 U.S.C. §§ 78m, 78o, or it must have made publicly available the information required by Rule 15c2–11, 17 C.F.R. § 240.15c2–11(a)(4) (1977). *See* 17 C.F.R. § 230.144(c)(1), (2) (1977).