**William Simon KATZ, Plaintiff,**

v.

**Robert MOLIC, et al., Defendants.**

**No. 83 Civ. 2943 (WCC).**

United States District Court,
S.D. New York.

Dec. 21, 1989.

William Simon Katz, Buffalo, N.Y., pro se.

Robert Abrams, Atty. Gen. (Darren O'Connor, Asst. Atty. Gen., of counsel), Albany, for defendants Molic, Strum, Abrams and Kurtz.

WILLIAM C. CONNER, District Judge.

## BACKGROUND

Plaintiff William Katz brought this action *pro se* under various civil rights statutes alleging deprivations of his constitutional rights. This Court has previously rendered three opinions in this action, the first directing plaintiff to supplement his complaint with a more specific factual basis, *Katz v. Molic, et al.*, No. 83 Civ. 2943 (WCC), 1984 WL 1078 (S.D.N.Y. Oct. 19, 1984); the second granting summary judgment to several defendants and denying a motion to dismiss the complaint filed by Robert Abrams, New York State Attorney General, and three of his assistants, Irwin Strum, Robert Molic and Daniel Kurtz, *Katz v. Molic, et al.*, No. 83 Civ. 2943

(WCC), 1986 WL 12521 (S.D.N.Y. Oct. 28, 1986). Thereafter, plaintiff objected to Magistrate Nina Gershon's Recommendation and Report ("the Report") which recommended dismissal for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). In its third opinion, the Court ordered plaintiff to show cause why the complaint should not be dismissed for failure to state a claim, *Katz v. Molic, et al.,* 128 F.R.D. 35 (S.D.N.Y.1989).

The action is presently before the Court on plaintiff's response to the last mentioned Order. Magistrate Gershon recommended dismissal on two grounds. Having reviewed the Report and considered *de novo* those portions to which plaintiff has objected, the Court hereby accepts and adopts the Report and dismisses the action.

## DISCUSSION

Magistrates are empowered by statute to preside over pretrial matters upon being appointed by a district judge. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Rule 72(b), Fed.R.Civ.P., instructs a district court judge to "make a *de novo* determination ... of any portion of the magistrates's disposition to which written objection has been made."[1] *See also* 28 U.S.C. § 636(b)(1); *Mokone v. Kelly,* 680 F.Supp. 679 (S.D.N.Y.1988); *Nelson v. Smith,* 618 F.Supp. 1186 (S.D.N.Y.1985). After conducting its review, the court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). The rule also permits the court to accept any portion of a magistrate's disposition to which no objection has been made as long as it is not "erroneous on the face of the record." Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules (citing *Campbell v. United States Dist. Court,* 501 F.2d 196, 206 (9th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)).

A district court's obligation to make a *de novo* determination does not require a second evidentiary hearing. Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules (cit-

ing *United States v. Raddatz,* 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 (1980)). The judge's review may be based solely upon the record. Fed.R.Civ.P. 72(b). In making its determination, the Court has reviewed Magistrate Gershon's Report, plaintiff's objection to the Report, defendants' opposition and plaintiff's reply.

Plaintiff attacks the Magistrate's Report on several grounds. Plaintiff asserts that the Magistrate improperly recommended dismissal despite the denial of earlier motions to dismiss and thus violated the law-of-the-case doctrine. Plaintiff further argues that he has adequately stated a federal claim and that the defense of qualified immunity cannot defeat his complaint on a motion to dismiss, in which all of the allegations are deemed true, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), and the *pro se* complaint is liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Plaintiff also requests leave to replead should the Court agree with the Magistrate.

### Law-of-the-Case

■ Plaintiff misconstrues the discretionary law-of-the-case doctrine, which does not prevent a court's reconsideration of a prior decision in light of an intervening change of controlling law or to correct an error. The doctrine does not bind a court's hand, but "merely expresses the practice of courts generally to refuse to reopen what has already been decided." *Messinger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912); *see United States v. Birney,* 686 F.2d 102 (2d Cir. 1982).

This Court previously denied defendants' motion to dismiss for failure to plead with sufficient particularity, for failure to allege personal involvement and for being partially time-barred, *Katz v. Molic, et al.,* No. 83 Civ. 2943 (WCC) (S.D.N.Y. Oct. 28, 1986). The Court also rejected defendants defense of good faith immunity. Magistrate Gershon recommended dismissal pursuant to

---

**1.** Having given plaintiff the opportunity to oppose dismissal of the complaint, the Court hereby treats plaintiff's opposition as a timely objection to the Magistrate's Report.

Rule 12(b)(6) because the Court had never addressed a motion to dismiss for failure to state a valid claim and therefore never fully explored whether plaintiff stated a deprivation of a federal right. The Magistrate also reconsidered the qualified immunity defense because she believed that a recent Second Circuit Court decision changed controlling law. Therefore, it is clear that the law-of-the-case doctrine did not prohibit the Magistrate's consideration.

*Deprivation of a Federal Right*

■ A claim for relief under 42 U.S.C. § 1983 [2] must allege that a person acting under color of state law deprived the claimant of a federal right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). It is not enough that a plaintiff show he has been wronged at the hands of a state official, rather, "a plaintiff must allege that he has been deprived of some right secured by federal statute or the United States Constitution." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). For the reasons fully set forth in the Magistrate's Report, I agree that plaintiff fails to allege a deprivation of a federal right.[3]

*Qualified Immunity Defense*

■ Even if plaintiff's complaint were read to allege a deprivation of a federal right, it would still fail to state a claim because defendants are entitled to qualified immunity. This defense is available to government officials to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." *Harlowe v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738,

73 L.Ed.2d 396 (1982). However, the defense is available to government officials only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

Before *Harlowe*, an official acting maliciously was not immune from suit. In *Harlowe*, however, the Supreme Court rejected this standard and the presence of malice or bad faith, contrary to plaintiff's assertion, is now irrelevant to the question of immunity. *See Anderson v. Creighton*, 483 U.S. 635, 645, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987); *Yalkut v. Gemignani*, 873 F.2d 31, 35 (2d Cir.1989); *Pollnow v. Glennon*, 757 F.2d 496, 501 (2d Cir.1985).

The grant of qualified immunity, then, turns upon whether there was a clearly established constitutional right of which the defendants knew or should have known at the time, a question of law which may be addressed by a motion to dismiss the complaint. *See Giacalone v. Abrams*, 850 F.2d 79, 85 (2d Cir.1988). The statutory or constitutional rights allegedly violated must be clearly established in a "particularized" sense so that "[t]he contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

The Second Circuit Court in *Neu v. Corcoran*, 869 F.2d 662 (2d Cir.), *cert. denied*, — U.S. ——, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989), recently addressed the applicability of qualified immunity to a charge of governmental defamation.[4] In reviewing prior Second Circuit holdings to demonstrate the unresolved ambiguity concerning govern-

---

**2.** Section 1983 states in pertinent part:
Every person who, under color of [state law] ... subjects ... any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

**3.** A copy of the Magistrate's Report, fully describing plaintiff's claim and the reasons why it is not federal in nature, is attached as an appendix hereto.

Plaintiff's newly raised claim that the complaint sounds in violations of his first amend-

ment rights to free speech, free association and petition the government is without factual basis or legal support. The Court has discovered no case law to sustain plaintiff's contention that the acts complained of constitute a deprivation of plaintiff's first amendment rights.

**4.** In its opinion, the Second Circuit Court did not conclude whether defamation was a deprivation of a federal right but solely rested on the grounds of qualified immunity.

mental defamation, the Court of Appeals held that it would not be clear to a reasonable government official that the defamation plaintiff had alleged was a deprivation of a protected liberty interest. *Id.* at 669–670. Magistrate Gershon concluded that *Neu's* holding insulates defendants from liability because their conduct was objectively reasonable. I agree. The holding in *Neu,* which is exactly on point, mandates application of the defense of qualified immunity and compels dismissal of plaintiff's complaint.

Plaintiff is denied leave to replead for the second time because it is clear that he cannot state a valid section 1983 claim.

## CONCLUSION

For the reasons discussed above, the Court accepts and adopts Magistrate Gershon's Report and dismisses the action.

SO ORDERED.

## REPORT AND RECOMMENDATION

NINA GERSHON, United States Magistrate:

*Procedural History*

Plaintiff *pro se* William Katz brought this action against numerous defendants alleging that they had deprived him of his constitutional rights. Katz was a founder and president of the American Society for the Prevention of Cruelty to Children and a founder and chairman of the Richmond County Society for the Prevention of Cruelty to Children ("the Richmond SPCC"). Complaint ¶ 3. On defendants' motion to dismiss the complaint, Judge Conner found that it contained only vague and conclusory statements, but he denied the motion and instead directed Katz to supplement his complaint with factual details. *See* Opinion and Order of October 28, 1986, at 3. Katz filed a supplement to his complaint with "somewhat more specific allegations," *id.,* which Judge Conner has determined to contain Katz's "only concrete factual allegations." *Id.*

Three of the original defendants, namely, Hortense Landau, the New York Society for the Prevention of Cruelty to Children,

and the Queensboro Society for the Prevention of Cruelty to Children, moved for summary judgment, and were granted that relief by Judge Conner. *See* Opinion and Order of October 28, 1986 at 4–13. As will be discussed shortly in more detail, the remaining defendants, Robert Abrams, the Attorney General of the State of New York, and three of his assistants, Robert Molic, Daniel Kurtz, and Irwin Strum, ("the State defendants") unsuccessfully moved to dismiss the complaint. They now move for summary judgment.

Katz's allegations against the State defendants are as follows:

(a) Defendants took part in "repeated and persistent interrogations and interviews of persons associated with plaintiff including [four named persons] during which these defendants, personally or through their agents, attempted to, or did, pressure, intimidate, threaten and coerce such persons associated with plaintiff to cease their association with plaintiff or to withhold their assistance to plaintiff in the enforcement of laws relating to or affecting children." Supplement to Complaint ¶ 1(a).

(b) Defendants engaged in "pressing and persistent interference with plaintiff's lawful vocation by pressuring the New York City Police Department to withhold its cooperation in plaintiff's attempts to enforce laws relating to child pornography, child prostitution and the sexual exploitation of children. Such interference was implemented by defendants' numerous contacts with individuals employed by the New York City Police Department including, but not limited to, Emil Chicatelli, and consisted of the passing of information, known to be false, by these defendants and intended to impart to those persons contacted the understanding that continued cooperation or association with plaintiff would subject them to investigation and damage to their reputations." *Id.* ¶ 1(b).

(c) Defendants contacted various city, state and federal government agencies, which plaintiff lists, "and in each case, knowingly relayed to such agencies false

and misleading information intended to induce such agencies to withdraw from a cooperative relationship with plaintiff or, in the alternative, to begin an investigation of plaintiff based upon such false information." *Id.* ¶ 1(c).

(d) Strum, (who is on the Board of Directors of the Queensboro Society for the Prevention of Cruelty to Children ("Queensboro"), as well as being an Assistant Attorney General), agreed with other directors and officers of Queensboro to "take steps necessary to prevent plaintiff from devulging [sic] to various government entities certain funding practices employed" by Queensboro. Complaint ¶ 24. "Strum and Queensboro had been engaged in an ongoing and unlawful campaign of fund-raising which included, but was not limited to, the solicitation and accepting of contributions from persons having business or pending matters before the Office of the Attorney General and more specifically the very bureau directed by Strum. That such contributions exceeded [$16,000] and were the subject of a complaint by plaintiff to defendants Abrams and Kurtz" (the "fund-raising scheme"). Supplement to Complaint ¶ 2.

The State defendants initially moved to dismiss on the grounds that: (1) the claim was not pleaded with sufficient particularity; (2) as against Abrams and Kurtz, the complaint did not allege personal involvement in the acts complained of; (3) all of the defendants are shielded from liability by "good faith immunity;" and (4) Katz's claims against Strum and Molic in their individual capacities are partially time-barred.

Judge Conner rejected the defendants' arguments that the complaint lacked specificity, that it failed to allege sufficient personal involvement by Abrams and Kurtz, and that it was time-barred. As to the defendants' claim of good faith immunity, he held as follows:

> Defendants contend that there are no factual allegations in the complaint that would warrant a finding of bad faith on their part. But fairly read, the crux of Katz's complaint is that the Attorney General's office has harassed him and persons associated with him for an improper purpose. Whether this is actually true or not, for the purposes of this motion, I must accept it as true. And, if Katz's allegations are taken as true, they would clearly support a finding of bad faith. Again, if defendants wish to put Katz to his proof on this issue, the appropriate vehicle is a motion for summary judgment.

The State defendants now move for summary judgment. They argue that plaintiff does not allege a constitutional violation and renew their argument that, in any event, they are shielded by qualified immunity. Based upon my review of the supplemented complaint, the arguments presently before the Court and the applicable case law, including *Neu v. Corcoran*, 869 F.2d 662 (2d Cir.1989), a case decided after Judge Conner's decision on the motion to dismiss, I find that it is unnecessary to consider the parties' submissions beyond the supplemented complaint itself in order to conclude that the complaint should be dismissed for failure to state a claim as well as on qualified immunity grounds. Therefore, defendants' motion will be treated as a motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6).

A claim may not be dismissed for failure to state a claim unless it is clear that the claimant can prove no set of facts in support of his allegations which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Further, in deciding a motion to dismiss for failure to state a claim, the court must accept as true the facts alleged in the complaint, and must view those facts in the manner most favorable to the plaintiff. *Joyce v. Joyce Beverages, Inc.*, 571 F.2d 703, 706 (2d Cir.), *cert. denied*, 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978). Since the supplemented complaint here was prepared by a *pro se* plaintiff, it must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972).

"It is axiomatic that a successful § 1983 claim requires more than a showing that

one has been wronged at the hands of a state or municipal official. Rather, a plaintiff must allege that he has been deprived of some right secured by federal statute or the United States Constitution." *Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Plaintiff's complaint fails to allege such a deprivation.

In *Paul v. Davis*, 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1976), Davis complained that two chiefs of police distributed flyers to approximately 800 merchants, which included the names and "mug shots" of "active shoplifters," among them Davis, who had been arrested for shoplifting but had not yet been tried. Davis alleged that, as a result, he was warned by his non-governmental employer not to be caught in a similar situation again, and that "the 'active shoplifter' designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities." *Id.* at 696–97, 96 S.Ct. at 1158–59. The Court held that Davis's complaint stated a "classical" claim for defamation under state law, but alleged no deprivation of a liberty or property interest that would trigger due process rights. It further stated that the precedents do not "establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1161.

Except where a person is deprived of "some more tangible interests such as employment," *id.*, only where defamation by the government results in the deprivation of a right previously held under state law are procedural due process safeguards required. *Paul*, 424 U.S. at 710–11, 96 S.Ct. at 1164–65. *Paul* distinguished cases where States had removed or altered rights which they had previously bestowed by law without procedural due process, such as withdrawing the right to drive (*Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); revoking parole (*Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)); or forbidding the sale of liquor to certain persons it had determined to be excessive drinkers (*Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)). *Id.* 424 U.S. at 708–11, 96 S.Ct. at 1164–65.

The question in the present case, then, is whether an incorporator and director of a not-for-profit corporation who alleges that official defamation interfered with his vocation has been deprived of "some more tangible interests such as employment," or some other right or status conferred by state law, as required by *Paul*, 424 U.S. at 701, 96 S.Ct. at 1160. The Second Circuit recently explored what *Paul* meant by "some more tangible interests such as employment." In *Neu v. Corcoran*, 869 F.2d 662 (2d Cir.1989), Neu, an automobile collision insurance salesman, alleged that state officials made defamatory remarks about him at a convention of insurance commissioners, and that, as a result, he was forced out of the business which was his sole livelihood. *Id.* at 664. The Second Circuit held that the complaint should have been dismissed on the ground of qualified immunity because a reasonable state official would not have known that this conduct violated Neu's "clearly established statutory or constitutional rights." *Id.* at 665, 669–70 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In so holding, the Court in *Neu*, 869 F.2d at 667, explained that *Paul* left some ambiguity:

> [*Paul*] did not say that "employment" had to be *government* employment. Thus, *Paul* might plausibly be interpreted as holding that any governmental defamation that causes a person to lose his job and impairs his ability to pursue his chosen profession or occupation is enough to constitute a deprivation of liberty, even if it does not occur in the course of dismissal from government employment or alteration of some other right or status recognized by state law....

On the other hand, ... *Paul* strongly suggests that defamation, even if it leads to a significant loss of employment opportunities, is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status.

*Neu* did not decide which interpretation of *Paul* is correct. Rather, as noted above, it held that, because of *Paul*'s ambiguity, Neu's complaint must be dismissed on qualified immunity grounds.

Turning to the facts of this case, it is clear that plaintiff was not a public employee. Rather, during the time of the events complained of, he was an incorporator and director of the Richmond SPCC, which was formed under Sections 401–406 of the New York Not-for-Profit Corporation Law.[1]

Nor does plaintiff allege that he was deprived of any other right conferred upon him by the State without due process. N.Y. Not-for-Profit Corporation Law § 202 creates certain powers for all not-for-profit corporations formed under that law, and Section 1403(b) adds certain "special powers" for corporations for the prevention of cruelty to children. Child protective corporations may, for example, bring suit for the violation of any law relating to or affecting children, and are entitled to the aid of police officers in the enforcement of such laws. Section 1403(b)(1) and (4). However, unlike the cases distinguished by *Paul*, where states conferred rights such as the

right to drive, to enjoy parole or to buy liquor and then revoked those rights without providing due process, in enacting its Not–for–Profit Corporation Law the State of New York did not create *individual* rights in the founders, officers, or directors of not-for-profit corporations to, *inter alia*, enforce child safety laws, or to the assistance of the police to that end. Rather, the SPCCs have those rights. Therefore, Katz's allegations do not amount to a claim that defendants' actions deprived him, without due process of law, of a legal right conferred on him by the State.

Finally, the supplemented complaint does not state a claim under the potentially broader interpretation of *Paul* that is discussed in *Neu*. *See* 869 F.2d at 667. Katz does not allege that defendants' conduct caused him "to lose his job *and* impairs his ability to pursue his chosen profession or occupation." *Id.* (emphasis added). Plaintiff alleges that by defaming him to his associates, the New York City Police Department, and other agencies, defendants interfered with his effective performance of what he calls his "vocation," namely, enforcing laws for the protection of children. He also may be fairly understood to allege that defendants' defamation will limit his opportunities to pursue a position in the area of child protective services in the future, at least in the New York metropolitan area. He does not allege, however, that defendants' defamation caused him to actually lose his position as founder and chairman of the Richmond SPCC.[2]

---

**1.** *Neu*, 869 F.2d at 668–69, discusses *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir.1980), where the plaintiff alleged official defamation in the course of the termination of his employment with a not-for-profit corporation created under New York law, and summary judgment was held to be "premature." *Neu* explains that the *Quinn* Court did not focus on the issue of whether the plaintiff's employment was public, but notes that the plaintiff's job "may have been considered at least quasi-governmental, since his original appointment had come at the behest of the Mayor ... and the employing corporation had received the vast majority of its funding from the federal government, allocated through the City of Syracuse." *Id.*

There is nothing in the N.Y. Not-for-Profit Corporation Law which would indicate that

serving as an incorporator or director of a SPCC would make one a public appointee. *See* sections 401–406. Moreover, in contrast to *Quinn*, Katz does not allege that he was appointed incorporator or director of the Richmond SPCC by any executive or legislative person or body. Nor does he allege that he was paid or that the organization was publicly funded.

**2.** As set forth in the May 5, 1987 Judgment and Order of the Supreme Court of the State of New York, County of Richmond, and the Verified Complaint in that action, (annexed to Supplemental Affidavit of Robert Molic as Exhibits C and A, respectively), the defendants' investigation led to a civil action in state court which resulted in the dissolution of the Richmond SPCC, pursuant to N.Y. Not-for-Profit Corporation Law §§ 1101(a), 1101(C), and 520.

Thus, Katz's allegations do not state a claim; they are no greater than those made by the plaintiff in *Paul,* and found wanting by the Supreme Court. As indicated above, Davis did not allege that defamation by state officials caused him to lose his job, but did allege that he was warned by his employer not to be caught shoplifting again, and that "the 'active shoplifter' designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities." *Paul,* 424 U.S. at 696–97, 96 S.Ct. at 1158–59.

Even if Katz had alleged that defendants' actions both caused him to lose his position and foreclosed him from other employment in his profession, his complaint fails because defendants are entitled to qualified immunity from liability under *Neu.* In reviewing prior Second Circuit holdings in order to show that they had not clarified the ambiguity left by *Paul,* the Court of Appeals in *Neu,* 869 F.2d at 667–669, discussed cases decided from 1976 to 1988. In his original complaint, dated April 1983, Katz alleged that defendants actions occurred from at least 1980 until "the present." Complaint ¶ 12. Thus, *Neu*'s qualified immunity holding clearly applies to defendants' alleged conduct.[3]

In sum, Katz's complaint should be dismissed for failure to state a claim under 42 U.S.C. § 1983 because he has not alleged that any constitutionally protected right was violated by defendants' conduct.

*Discovery*

Katz, in opposition to defendants' motion for summary judgment, asserts that the motion should be denied, or, in the alternative, that he should be permitted to conduct discovery in order to respond to the motion. In light of the failure of the supplemented complaint to state a claim, discovery would be futile, and plaintiff's request for discovery is denied. *See Eastway,* 762 F.2d at 251.

Copies of this report are being mailed today to plaintiff *pro se* and defendants' counsel who are hereby put on notice that any objections to this report must be made in conformity with Rule 72(b) of the Federal Rules of Civil Procedure. Thus, a party must serve and file, with a copy to me, specific written objections to the report within ten (10) days after being served with a copy of this report. A party that fails to file timely objections waives the right to further judicial review of the decision. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek v. Canadair Ltd,* 838 F.2d 55, 8 (2d Cir.1988).

Dated: June 7, 1989.

---

**3.** As to the fund-raising scheme allegations against Strum, it is unclear whether plaintiff intends simply to establish a motive for Strum's acts of defamation, which, as set forth in the text, are not actionable under the federal civil rights laws, or to assert a separate claim. Assuming the latter, plaintiff lacks standing to sue Strum for such a scheme.

In his allegations concerning the fund-raising scheme, plaintiff's only reference to himself is Strum's alleged agreement to "take steps necessary" to prevent plaintiff from divulging the fund-raising practices. Even after Judge Connor ordered him to provide as much detail as possible in supplementing his complaint, plaintiff did not state what these "steps" were; nor did he allege that Strum did anything more than make a verbal statement that he would take

such steps. An allegation that such a statement was made does not, alone, state a claim that plaintiff has suffered any constitutional harm. Besides the reference just mentioned, plaintiff's allegations do not allege how the fund-raising scheme even related to, much less how it harmed, plaintiff. Therefore, plaintiff does not have standing to sue Strum for the alleged fund-raising scheme. *See e.g. Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 542, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant....'") (citations omitted).