Joseph DEGULIS, Plaintiff,

v.

LXR BIOTECHNOLOGY, INC., Mark S. Germain, L. Scott Minick, Mark J. Tomei, James D. Coombes, David Blech, D. Blech & Company, Inc. and Shoenberg Hieber, Inc., Defendants.

George KOZLOSKI, Plaintiff,

v.

INTELLIGENT SURGICAL LASERS, Heinz R. Gisel, Ted G. White, Edward M. Lake, Robert J. Feeney, Jr., Anthony B. Envin, Robert J. Kunze, Ann H. Lamont, C. Christian Von Weizsacker, David Blech, and D. Blech & Co., Inc., Defendants.

John DEGULIS, Plaintiff,

v.

ARIAD PHARMACEUTICALS, INC., Harvey J. Berger, Edgar Haber, David Blech, D. Blech & Co., Inc. and Shoenberg Hieber, Inc., Defendants.

Bernard WEISS, et al., Plaintiffs,

v.

David BLECH, Texas Biotechnology Corporation, John M. Pietruski, David B. McWilliams, Richard A.F. Dixon, Stephen L. Mueller, John R. Plachetka, Joseph M. Welch, James T. Willerson, D. Blech & Co., Inc. and Issac Blech, Defendants.

Robert KATZ, on behalf of himself and all others similarly situated, Plaintiffs,

v.

David BLECH, LXR Biotechnology, Inc., Mark S. Germain, L. Scott Minick, Mark J. Tomei, James D. Coombes and Christopher S. Henney, Defendants.

Nos. 95 Civ. 4204 (RWS), 95 Civ. 4299 (RWS), 95 Civ. 4298 (RWS), 95 Civ. 6422 (RWS) and 95 Civ. 7215 (RWS).

United States District Court, S.D. New York.

June 6, 1996.

Milberg Weiss Bershad Hynes & Lerach, New York City (David J. Bershad, Richard H. Weiss, Brad N. Friedman, of counsel), Chair of Plaintiffs' Executive Committee, Kaplan, Kilsheimer & Fox, New York City (Robert N. Kaplan, Richard J. Kilsheimer, of counsel), Gilman and Pastor, Boston, MA (Kenneth G. Gilman, Peter Lagoria, of counsel), Bernstein Liebhard & Lifshitz, New York City (Sandy A. Liebhard, of counsel), Members of Plaintiffs' Executive Committee, for Plaintiffs.

Michael J. Pucillo, Wendy H. Zoberman, West Palm Beach, FL, Sullins, Johnston, Rohrbach & Magers, Houston, TX (Herbert T. Schwartz, of counsel), Kipnis, Tescher, Lippman, Valinsky & Kain, Ft. Lauderdale, FL (Howard Tescher, of counsel), for Bernard Weiss.

Zwerling, Schachter, Zwerling & Koppell, New York City (Robert S. Schacter, Mary E. Neu, of counsel, Berman DeValerio, Pease & Tabacco, San Francisco, CA (Joseph J. Tabacco, Jr., Nicole Lavallee, of counsel), Goodkind Labaton Rudoff & Sucharow, New York City (Joel H. Bernstein, of counsel), for Robert Katz.

Robinson Silverman Pearce Aronsohn & Berman, New York City (Eric Rieder, Noah M. Weissman, of counsel), for Defendant Mark S. Germain.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Max Gitter, of counsel), for

**1304**

Defendants Ariad Pharmaceuticals, Inc., Harvey J. Berger and Edgar Haber.

Morgan, Lewis & Bockius, New York City (Michele Connaughton, of counsel), for Defendants Intelligent Surgical Lasers, Inc., Heinz R. Gisel, Ted G. White, Edward M. Lake, Robert J. Fenney, Jr., Anthony B. Envin, Robert J. Kunze, Ann H. Lamont and C. Christian Von Weizsacker.

Thelen, Marrin, Johnson & Bridges, New York City (Jonathan E. Polonsky, of counsel), for Defendants LXR Biotechnology, Inc., Mark J. Tomei, James D. Coombes, L. Scott Minick and Christopher S. Henry.

Porter & Hedges, Houston, TX (Mark K. Glasser, of counsel), Miller & Wrubel, New York City (Martin D. Edel, of counsel), for Defendants Texas Biotechnology Corp., John M. Pietruski, David B. McWilliams, Richard A.F. Dixon, Stephen L. Mueller, John R. Plachetka, Joseph M. Welch and James T. Willerson.

### OPINION

SWEET, District Judge.

Defendants in four related cases arising under Sections 11, 12(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k(a), 77l (a)(2), 77o, and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), have moved to dismiss the claims against them pursuant to Federal Rule of Civil Procedure Rule 9(b) on the ground that the Complaints fail to plead fraud with particularity, and pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that the Complaints fail to state a claim upon which relief may be granted. In *Katz v. Blech*, 95 Civ. 7215 (RWS), (*"Katz"* or the "Katz Action"), those motions have been made by Defendants L. Scott Minick ("Minick"), Mark J. Tomei ("Tomei"), James D. Coombes ("Coombes") and Christopher S. Henney ("Henney") (collectively, the "Individual *LXR* Defendants") and LXR Biotechnology, Inc. ("LXR") (collectively the *"LXR* Defendants"), and Mark S. Germain ("Germain"). In *Degulis v. LXR Biotechnology*, 95 Civ. 4204 (RWS) (*"LXR"* or the "LXR Action"), the motions have been made by LXR, Tomei, Coombes and Germain. In *Degulis v. Ariad*, 95 Civ. 4298 (RWS), (*"Ariad"* or the "Ariad Action"), the motions have been made by defendants Harvey J. Berger ("Berger") and Edgar Haber ("Haber") (collectively, the "Individual *Ariad* Defendants") and Ariad Pharmaceuticals, Inc. ("Ariad") (collectively, the *"Ariad* Defendants"). In *Kozloski v. Intelligent Surgical Lasers*, 95 Civ. 4299 (RWS), (*"ISL"* or the "ISL Action"), the motions have been brought by defendants Heinz R. Gisel ("Gisel"), Ted G. White ("White"), Edward M. Lake ("Lake"), Robert J. Feeney, Jr. ("Feeney"), Anthony B. Evnin ("Evnin"), Robert J. Kunze ("Kunze"), Ann H. Lamont ("Lamont") and C. Christian Von Weizsacker ("Von Weizsacker") (collectively, the "Individual *ISL* Defendants") and Intelligent Surgical Lasers, Inc. ("ISL") (collectively, the *"ISL* Defendants"). For the reasons set forth below, those motions will be denied.

Defendants in a fifth related case, *Weiss v. Blech*, 95 Civ. 6422 (RWS), brought pursuant to Sections 11, 12 and 15 of the Securities Act, John M. Pietruski ("Pietruski"), David B. McWilliams ("McWilliams"), Richard A.F. Dixon ("Dixon"), Stephen L. Mueller ("Mueller"), John R. Plachetka ("Plachetka"), Joseph M. Welch ("Welch") and James T. Willerson ("Willerson") (the "Individual *TBC* Defendants") and Texas Biotechnology Corporation ("TBC") (collectively, the *"TBC* Defendants") have moved for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) of the Order dated August 4, 1995, of the Honorable Kenneth M. Hoyt, United States District Judge for the United States District Court for the Southern District of Texas, Houston Division, denying their motion to dismiss under Fed.R.Civ.P. 9(b) and 12(b)(6) (the "Texas Order"), and, on reconsideration, for dismissal, pursuant to Fed. R.Civ.P. 9(b) and 12(b)(6). (The Individual *Ariad* Defendants, the Individual *ISL* Defendants, the Individual *LXR* Defendants and the Individual *TBC* Defendants are collectively referred to as the "Individual Defendants".)

For the reasons set forth below, the motion to reconsider will be granted, and, on

reconsideration, the motions to dismiss will be denied.

*Parties*

### I. The Plaintiffs

*Ariad* and *LXR* Plaintiff Joseph Degulis purchased units, including common stock and warrants, in the initial public offerings ("IPOs") of Ariad and LXR. *ISL* Plaintiff George Kozloski purchased shares of ISL in its IPO. *Katz* plaintiff Robert Katz purchased shares in LXR's IPO. *Weiss* Plaintiffs Bernard Weiss and Richard Hunt purchased stock and warrants in TBC's IPO. Degulis, Kozloski, Weiss and Hunt (collectively, "Plaintiffs") seek to bring this action on behalf of themselves and others similarly situated.

### II. The Blech and Blech & Co. Defendants

David Blech, a defendant in all of these actions, was managing director and sole shareholder of Blech & Co. Blech served at various times on the boards of directors of Ariad, ISL, LXR and TBC (collectively, the "Companies").

Blech & Co., a defendant in *Ariad, ISL, LXR* and *Weiss,* was a registered broker-dealer. It acted as the underwriter for several companies, primarily in the biotechnology field, including—as sole underwriter—for each of the Companies. Blech & Co. ceased operations in September 1994.

*Weiss* Defendant Isaac Blech is David Blech's brother.

*Katz* and *LXR* Defendant Germain was a managing director of Blech & Co. until it ceased operations. Germain served as a director of LXR from April 1993 through October 1994 and served as Chairman of the Board from December 1993 through the end of his tenure as director.

### III. The Ariad Defendants

Ariad is a biotechnology company engaged in the research and development of pharmaceuticals.

Berger is Chairman, President and CEO of Ariad. Haber, an outside director, is Vice Chairman of the Ariad board. Both hold stock in Ariad. Berger and Haber signed the 1994 Ariad Registration Statement.

Non-movant Shoenberg is a registered broker-dealer. It served as the "qualified independent underwriter" in connection with the Ariad and LXR IPOs. Shoenberg was engaged to deliver an opinion on the offering price of those stocks in light of Blech's and Blech & Co.'s relations with Ariad and LXR.

### IV. The ISL Defendants

ISL is a biotechnology company engaged in the research and development of pharmaceuticals.

Gisel, White, Lake, Feeney, Evnin, Kunze, Lamont, Von Weizsacker are officers and directors who signed the Registration Statement for ISL's initial public offering.

### V. The LXR Defendants

Minick, Tomei, Coombes and Henney were officers and/or directors of LXR at the time of the IPO. Minick was the President and Chief Executive Officer and a director of the Company. Tomei was the Chief Operating Officer, Chief Financial Officer, secretary and director of the Company. Coombes was a member of the Board of Directors and the Company's audit committee and a consultant to LXR. Henney was a member of the Board of Directors and the audit committee. Minick, Tomei, Coombes and Henney signed the Registration Statement. Minick, Tomei and Coombes owned LXR stock at the time of the IPO.

### VI. The TBC Defendants

TBC is a biopharmaceutical company engaged in the research and development of molecular drugs.

Pietruski was, at the time of the Company's IPO, the Chairman of the Board of Directors of TBC. McWilliams was TBC's President and Chief Executive Officer and a member of the Board of Directors. Dixon was TBC's Vice President of Research and a Director of the Company. Mueller was TBC's Director of Finance Administration, Treasurer and Assistant Secretary. Plachetka was TBC's Vice President of Clinical De-

velopment. Welch was TBC's Vice President of Business Development. Willerson was Chairman of TBC's Scientific Advisory Board and a member of TBC's Board of Directors. Each of the individual *TBC* Defendants executed the Registration Statement in connection with TBC's IPO.

### Prior Proceedings

### I. Actions Before the Court

Six actions related to the alleged activities of Blech and Blech & Co. in underwriting initial public offerings are currently before this Court. They are *Kozloski v. Intelligent Surgical Lasers*, 95 Civ. 4299 (RWS) (*"ISL"* or the "ISL Action"); *Degulis v. Ariad Pharmaceuticals, Inc.*, 95 Civ. 4298 (RWS) (*"Ariad"* or the "Ariad Action"); *Degulis v. LXR Biotechnology, Inc.*, 95 Civ. 4204 (RWS); *Weiss v. Blech*, 95 Civ. 6422 (RWS) (*"Weiss"* or the "Weiss Action"); *Katz v. Blech*, 95 Civ. 6423 (RWS) (*"Katz"* or the "Katz Action"); and *In re Blech Securities Litigation*, 94 Civ. 7696 (RWS) (*"In re Blech"*). *In re Blech* is itself a consolidation of four related actions: *Libauer v. Blech*, 94 Civ. 7696 (RWS), *Garfinkel v. Blech*, 94 Civ. 7873 (RWS), *Bronson v. Blech*, 94 Civ. 7959 (RWS), and *Mays v. D. Blech & Co.*, 94 Civ. 7704 (RWS). A seventh action, *Kozloski v. Texas Biotechnology*, 95 Civ. 4203 (RWS), was voluntarily dismissed without prejudice on February 7, 1996.

### II. Ariad, ISL, Katz and LXR

The Complaint in *LXR* was filed in this Court on June 7, 1995. The Complaints in *Ariad* and *ISL* were filed in this Court on June 8, 1995. On August 31, 1995, *Katz* was transferred to this Court from the Northern District of California by the Judicial Panel on Multidistrict Litigation (the "JPML").

On September 15, 1995, the *Ariad* Defendants filed their notice of motion to dismiss the complaint against them. On September 18, 1995, the *ISL* Defendants filed their notice of motion to dismiss. On November 22, and November 28, 1995, Germain and the *LXR* Defendants, respectively, each filed a notice of motion to dismiss the complaints in *LXR* and *Katz*.

### III. Weiss

The Complaint in *Weiss* was filed on November 21, 1994, in the United States District Court for the Southern District of Texas, Houston Division (the "Texas Court"). On January 23, 1995, the *TBC* Defendants moved that court to dismiss the *Weiss* Complaint, on the grounds that it failed to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), and that it failed to comply with the pleading requirements of Federal Rule of Civil Procedure 9(b). Before any decision by the Texas Court, Plaintiffs in *In re Blech* filed a motion requesting that the JPML transfer the *Weiss* Action to this Court, alleging that it alleged the same set of operative facts as those alleged in *In re Blech*. On June 1, 1995, the Honorable Calvin Botley, the magistrate judge overseeing *Weiss* in the Texas Court, entered an order staying the proceedings, including the *TBC* Defendants' Motion to Dismiss, pending decision of the JPML on the motion for transfer (the "Stay Order").

On June 26, 1995, despite the Stay Order, Magistrate Judge Botley issued a memorandum and recommendation that the *TBC* Defendants' motion to dismiss be denied. The *TBC* Defendants timely objected to Magistrate Judge Botley's memorandum and recommendation on several grounds, including an asserted inconsistency with the Stay Order.

Subsequently, on August 4, 1995, Judge Hoyt issued an Order adopting Judge Botley's recommendation in full and denying the motion to dismiss. On August 14, 1995, the JPML ordered the transfer of this case to this Court.

On November 6, 1995, the *TBC* Defendants filed their notice of motion in this Court for reconsideration of Judge Hoyt's order denial of their motion to dismiss. They amended their notice of motion on November 20, 1995.

Oral argument was heard on all motions on February 6, 1996, and the motions were deemed fully submitted at that time.

### Facts

The facts as set forth here reflect only the allegations of the complaints in these actions

and do not constitute findings of fact by the Court. The allegations of the Complaints are similar to one another. Each alleges, with some variation, that the relevant Company—Ariad, ISL, LXR, or TBC—made an initial public offering with Blech & Co. as underwriter; omitted material facts from its prospectus and registration statement; and (with the exception of the *Weiss* Complaint) fraudulently induced Plaintiffs to purchase shares and warrants at an artificially high price despite knowledge of the detrimental effect that Blech's and Blech & Co.'s substantial debt would eventually have on the price of the shares.

## I. *The Prospectuses*

In connection with the IPO, each Issuer filed a Registration Statement and Prospectus with the Securities and Exchange Commission. Each prospectus furnished certain information regarding Blech, Blech & Co., and the risks attendant to their involvement with the IPOs. The prospectuses disclosed that Blech & Co., the sole shareholder and CEO of Blech & Co., was underwriting the entire amount of the IPOs. The prospectuses also disclosed Blech & Co.'s limited experience as an underwriter and that Blech & Co.'s primary function would be to sell the common stock offered in the IPO.

The Prospectuses disclosed that the Companies had a credit arrangement with Blech and with certain trusts connected with him and that after the IPO, these lenders would convert the Companies' credit obligation into common stock. The Prospectuses disclosed that shares of the Companies' common stock were held by persons or entities deemed to be affiliated with Blech & Co. The Prospectuses also disclosed that after the IPO, the Companies would sell to Blech & Co. a warrant to purchase additional shares of common stock.

The Prospectuses also disclosed that there had been no public market for the Companies' common stock and that there could be no assurance that an active trading market for the shares would develop. The Ariad and LXR Prospectuses stated that although Shoenberg, an independent underwriter, had performed due diligence and had concurred with the recommended price, the IPO price might bear no relationship to the price at which the common stock would trade after completion of the offering.

Certain of the prospectuses made further disclosures regarding the risks involved in the IPO, such as indications that "the underwriter may over-allot or effect transactions which stabilize or maintain the market price of the common stock at a level above that which might otherwise prevail in the open market" and that such stabilizing could cease at any time; that "the common stock offered hereby involves a high degree of risk," and that "there can be no assurance ... that additional funding will be available on favorable terms, if at all."

## II. *The Alleged Scheme*

After taking effective control of the Issuers, Blech instigated schemes to take them public and thereafter to artificially inflate and maintain the market prices for their shares. These IPOs created a market for company shares. However, the IPO price was pegged at an unreasonably high price per share and could not be reasonably maintained.

As a market-maker, it was necessary for Blech and Blech & Co. to be able to purchase and sell shares of the Issuers' stock on the open market after the IPO. However, at the time of the IPOs, Blech and Blech & Co. were highly leveraged and their financial positions precarious. Blech's substantial personal fortune was virtually all tied to biotechnology companies either which Blech had taken public or in which he was heavily invested and made a market. Blech raised the cash he needed to make the market in the biotechnology stocks in which he was involved by liquidating shares of certain companies and by inflating the prices of the stock he purchased. Furthermore, Blech had pledged a substantial part of his securities holdings, including stock of the Companies, as collateral under bank lines of credit. As a result, there were significant risks that Blech would not be able to maintain the stock price and that the Companies' stock would decrease substantially should Blech fail.

### III. The Omissions From the Prospectuses

The Prospectuses failed to disclose any of these material facts. More particularly, the Prospectuses failed to disclose that, after the IPO, Blech would position Blech & Co. as the primary market maker for the Companies' stocks in order to artificially maintain their market prices and that the market price for common stock after the IPOs would be heavily dependent on Blech's continual purchases. The Prospectuses also failed to disclose Blech's leveraged and precarious financial condition, Blech's extended commitments to numerous other biotechnology companies (and the effect of those commitments on Blech's ability to maintain an orderly market for the Companies' shares), and the extent to which Blech's subsequent domination of the market for the Issuers' shares all would pose a serious threat to the market liquidity of shares purchased by investors in the IPOs and in the after-market. The Prospectuses also failed to disclose that the Issuers' shares were particularly risky and susceptible to sharp declines in market price, because Blech's bankers had the right to sell substantial quantities of the pledged securities to cover shortfalls in the value of Blech's collateral. The Prospectuses failed to disclose that Blech's assets were primarily liquid and that Blech had been the target of margin calls in April 1994, and had had to sell 2,763,-750 shares of NeoRx stock to meet those calls.

### IV. The Decline of Blech & Co.

In the months following the IPOs, Blech's financial situation continued to deteriorate. Ultimately, Blech faced a cash-flow problem and began liquidating his personal portfolio of biotechnology stock. On September 22, 1994, Blech & Co. suspended market-making activities in stocks it had brought public, because its financial reserves had fallen below the required level. On September 23, 1994, the firm of Josephthal, Lyon & Ross, Inc. acquired all of the accounts and brokers of Blech & Co., which has not reopened for business. Without Blech's support and as a result of the collapse of Blech & Co., the price of the Companies' stocks decreased significantly.

### Claims Stated

Each of the Complaints alleges claims for relief against all of the Moving Defendants named in that Complaint based upon Sections 11 and 12(2) of the Securities Act. Each of the Complaints also alleges claims for relief against all of the Individual Defendants named in that Complaint—and, in *Katz* and *LXR*, against Germain—based upon Section 15 of the Securities Act for controlling person liability.

All but the *Weiss* Complaint also seek relief from the Individual Defendants in their respective actions—and from Germain in *Katz* and *LXR*—under Section 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder. The *Ariad, ISL* and *Katz* Complaints also seek to hold certain defendants liable for controlling person liability under Section 20(a) of the Exchange Act.

Finally, the *Ariad, ISL* and *LXR* Complaints contain claims of common law fraud against all of the Moving Defendants named in each respective complaint.

### The Motions to Dismiss

The Moving Defendants have asserted several grounds on which the Complaints may be dismissed: (1) that the Complaints fail to comply with the particularity requirements of Rule 9(b); (2) that the Complaints do not assert claims for relief under Rule 12(b)(6), because the alleged omissions were immaterial; (3) that the Moving Defendants were not "sellers" within the meaning of section 12; (4) that the Individual Defendants are not "controlling persons"; and (5) that the pendent state law claims should be dismissed upon dismissal of the federal law claims.

### Discussion

### I. The Decision of the Texas Court Will Be Reconsidered

The *TBC* Defendants have moved for reconsideration of the Texas Court's denial of their motion to dismiss the Complaint against them in *Weiss v. Blech.* In the interests of consistency among these related actions and without addressing the merits of the Texas court's decision, the motion will be granted.

However, for the reasons discussed below common to the five actions under consideration in this opinion, the motion to dismiss will, upon reconsideration, be denied.

The *TBC* Defendants have made their motion pursuant to Federal Rule of Civil Procedure 54(b), which provides that, absent entry of a final judgment, an "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Rule 54(b), Fed.R.Civ.P.

■ A transferee court in a multi-district litigation thus has the power to modify interlocutory orders entered by the transferor court prior the transfer under 28 U.S.C. § 1407. *See, e.g., In re Grand Jury Proceedings (Kluger)*, 827 F.2d 868, 871 n. 3 (2d Cir.1987). Our Court of Appeals has suggested, albeit in dictum, that "[t]he transferee district court has the power and the obligation to modify or rescind any orders in effect in the transferred case which it concludes are incorrect." *Id.*

■ Of course, the fact that this Court can reconsider the Texas Order does not mean that it need do so or should do so. The Court of Appeals has generally limited a court's reconsideration even of its own opinions to situations where there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992). Furthermore, the law of the case doctrine, although not binding on the court, *see id.*, "counsels against reopening issues previously decided" absent those same "compelling circumstances." *Siderpali, S.P.A. v. Judal Indus., Inc.*, 833 F.Supp. 1023, 1027 (S.D.N.Y.1993); *see also Branch v. Ogilvy & Mather, Inc.*, 765 F.Supp. 819, 823 (S.D.N.Y.1990) ("The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated.") (quoting *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982)).

■ Nonetheless, the law of the case does not "bind a court's hand" or "prevent a court's reconsideration of a prior decision in light of an intervening change of controlling law or to correct an error." *Katz v. Molic*, 727 F.Supp. 114, 115 (S.D.N.Y.1989) (citations omitted), *aff'd*, 909 F.2d 1473 (2d Cir. 1990). Our Court of Appeals has confirmed that:

> the law of the case is at best, a discretionary doctrine which does not constitute a limit on the court's power but merely expresses the general practice of refusing to reopen what has been decided. Thus, judges of coordinate jurisdiction are not bound by each others rulings, but are free to disregard them if they so choose.

*United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982) (citations omitted).

■ Regardless of the merits of the Texas Court's decision, here compelling reasons exist for reconsideration. The peculiar circumstances of the transfer and the posture of the related actions in this case argue strongly for it. Reconsideration following transfer by the JPML can ensure consistent pretrial rulings. *See In re Long Distance Telecom. Litig.*, 612 F.Supp. 892, 902–03 (E.D.Mich.1985), *rev'd in part on other grounds*, 831 F.2d 627 (6th Cir.1987). Moreover, transfer of an action by the JPML can constitute, as here, the type of "significant" and "fundamental" change warranting reconsideration of the order by the transferee court. *Id.* at 903. Here, the Court has before it motions to dismiss in four of the other related actions, which involve in large part the same facts and legal issues. To achieve consistent rulings on the motions to dismiss currently pending before the Court in all of the Blech Securities matters, it is appropriate, regardless of the merits of the Texas Court's order, to readdress the *TBC* Defendants' motion to dismiss in *Weiss*. *See In re Multi–Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 678 (D.C.Cir.1981) ("Proper coordination of complex litigation may be frustrated if other courts do not follow the lead of the transferee court.").

For these reasons, the motion to reconsider will be granted. However, for the reasons

discussed below, the motion to dismiss will, on reconsideration and for the same reasons stated by the Texas Court, be denied.

## II. *The Motions to Dismiss Pursuant to Rule 9(b) Will Be Denied*

### A. *Rule 9(b) Does Not Apply to the Section 11 and 12(2) Claims*

██ Rule 9(b) applies to the Section 10(b), Rule 10b–5 and common law fraud claims in the *Ariad, ISL, Katz* and *LXR* Actions, which claims are expressly based on fraudulent acts, but it does not apply to the claims asserted under Section 11 and 12(2) as framed in those and the *Weiss* Complaints.

Rule 9(b) requires particularity in "all averments of fraud or mistake." The rule has thus been held to apply to claims under Sections 11 and 12(2) only where they sound in fraud. *See Shapiro v. UJB Fin. Corp.,* 964 F.2d 272 (3d Cir.1992), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *Neubauer v. Eva–Health USA, Inc.,* 158 F.R.D. 281, 283 n. 1 (S.D.N.Y.1994); *Maywalt v. Parker & Parsley Petroleum Co.,* 808 F.Supp. 1037, 1052 (S.D.N.Y.1992). Fraud is not an element in Section 11 and 12(2) claims, which provide for strict liability: only a material misstatement or omission need be shown to establish a *prima facie* case, and scienter need not be alleged. *See* 15 U.S.C. §§ 77k(a), 77l(2); *Herman & MacLean v. Huddleston;* 459 U.S. 375, 381–82, 103 S.Ct. 683, 686–87, 74 L.Ed.2d 548 (1983); *Wilson v. Saintine Exploration & Drilling Corp.,* 872 F.2d 1124, 1126 (2d Cir.1989); *Capri v. Murphy,* 856 F.2d 473, 478 (2d Cir.1988). The Section 11 and 12(2) claims against Blech and Blech & Co. surely sound in fraud, but those levelled at the Moving Defendants seem more clearly to sound in negligence. *Cf. Weiss v. Blech,* Civil Action No. H–94–3973, slip op. at 4–5 (S.D.Tex. June 26, 1995); *see also In re Chambers Dev. Secs. Litig.,* 848 F.Supp. 602, 624 (W.D.Pa. 1994). The fact that subsequent counts in the Complaint allege fraud and that certain acts underlie both the Section 11 and 12(2) claims and the claims that directly allege fraud does not necessarily mean that the former are based in fraud. Therefore, only the Section 10(b) and common law fraud

claims are subject here to the requirements of Rule 9(b), and the motions to dismiss the Section 11 and 12(2) claims for failure to plead fraud with sufficient particularity will be denied.

### B. *The Section 10(b) and Common Law Fraud Claims Comply With Rule 9(b)*

#### 1. *Specific Acts Are Adequately Alleged*

Because the Section 10(b) and common law fraud claims are pled with sufficient particularity, the Moving Defendants' motions to dismiss those claims pursuant to Rule 9(b) will be denied.

██ Rule 9(b) requires that in all allegations of fraud, the circumstances constituting the fraud must be stated with particularity. *See Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994); *In re Time Warner Inc. Secs. Litig.,* 9 F.3d 259, 265 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70; *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444–45 (2d Cir.1971). Although this requirement is read in conjunction with the admonition of Rule 8 that a pleading shall contain "a short and plain statement of the claim....," *see Ouaknine v. MacFarlane,* 897 F.2d 75, 79 (2d Cir.1990), and there is no requirement that "detailed evidentiary matter" be pleaded, *Goldman v. Belden,* 754 F.2d 1059 (2d Cir.1985); *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 n. 20 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980), the pleading must be sufficiently particular to serve the three goals of Rule 9(b). They are (1) to provide a defendant with fair notice of the claims against it; (2) to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. *See DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *O'Brien v. Price Waterhouse,* 740 F.Supp. 276, 279 (S.D.N.Y.1990), *aff'd,* 936 F.2d 674 (2d Cir.1991).

 Fraud allegations may be based upon information and belief as to facts peculiarly within the opposing party's knowledge. *Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997,

1003 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). Where manipulation is alleged, as opposed to affirmative misrepresentation, some or all of the facts may be in the control of the defendants and inaccessible to the plaintiffs without discovery. *Three Crown Ltd. Partnership v. Caxton,* 817 F.Supp. 1033, 1040 (S.D.N.Y.1993). Moreover, in cases of corporate fraud, the requirements of Rule 9(b) are relaxed as to matters particularly within the opposing party's knowledge. *See Stern v. Leucadia Nat'l Corp.,* 844 F.2d 997, 1003 (2d Cir.1988), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). This is particularly the case where, as here, discovery has not yet commenced. *See Three Crown,* 817 F.Supp. at 1040.

■ The Moving Defendants allege that the Complaints fail to meet Rule 9(b) by failing to specify what transactions, practices and courses of business operated as fraud and deceit upon Plaintiffs. The various Complaints, however, delineate with sufficient specificity the acts and omissions allegedly amounting to market manipulation. The Complaints allege that the Moving Defendants participated in the scheme to manipulate the market prices of Ariad, ISL, LXR and TBC stock by preparing and issuing the Prospectuses and by failing to disclose material information about how the market for the stock was being manipulated. The Complaints detail which allegedly material facts were omitted from the Prospectuses. These allegations are sufficient to present the Moving Defendants with notice of the charges levelled against them.

■ The Moving Defendants argue further that the Complaints fail to allege specific facts identifying each individual Defendant's role in the alleged fraudulent scheme, thus failing to tie them to particular acts. Rule 9(b) is not satisfied by [a] complaint in which "defendants are clumped together in vague allegations." *Three Crown,* 817 F.Supp. at 1040; *see also Connolly v. Havens,* 763 F.Supp. 6, 10–11 (S.D.N.Y.1991); *Index Fund Inc. v. Hagopian,* 609 F.Supp. 499, 504–05 & n. 8 (S.D.N.Y.1985); *Manela v. Gottlieb,* 784 F.Supp. 84, 87 (S.D.N.Y.1992); *Gold v. Fields,* 92 Civ. 6680, 1993 WL 212672 at *3 (S.D.N.Y. June 14, 1993) (allegations that "merely lump claims against undifferentiated 'defendants' violate" Rule 9(b)); *Red Ball Interior Demolition Corp. v. Palmadessa,* 874 F.Supp. 576, 584 (S.D.N.Y.1995).

■ The Complaints do set out generally the relation of the Individual Defendants to the alleged bad acts. The Complaints allege (i) that the Individual Defendants were high-ranking officers and directors; (ii) that they were privy to confidential information regarding the Companies, their underwriters and the market for their shares; (iii) that they held substantial equitable interests in the Companies; (iv) that each was responsible for the contents and dissemination of the Prospectuses; (v) that each participated in the preparation of and approved the Prospectuses and that the directors signed the Prospectuses; and (vi) that each omitted to disclose the alleged material facts.

■ It is true that these allegations do not tie each defendant to a particular act. However, where the defendants are insiders—here directors of the Companies or of Blech & Co.—no specific connection between them and fraudulent representations in a prospectus is necessary. *See DiVittorio,* 822 F.2d at 1242; *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir.1986); *Neubauer v. Eva–Health USA, Inc.,* 158 F.R.D. 281, 283 (S.D.N.Y. 1994); *Kane v. Wichita Oil Income Fund,* 90 Civ. 5714 (PKL), 1991 WL 233266 (S.D.N.Y. Oct. 29, 1991). Similarly, allegations that the Companies, through their officers and directors, knew of the falsity of the Prospectuses they issued or acted with reckless disregard as to their truth sufficiently alleges the Companies' role. *See Ballan v. Upjohn Co.,* 814 F.Supp. 1375 (W.D.Mich.1992). Further, "in cases of corporate fraud where the false and misleading information is conveyed in prospectuses, registration statements, annual reports, press releases, or other group published information, it is reasonable to presume that these are the collective actions of the officers." *Quantum Overseas, N.V. v. Touche Ross & Co.,* 663 F.Supp. 658, 667–68 (S.D.N.Y.1987). Consequently, where, as here, the defendants are a

narrowly defined group of highly ranked officers or directors who participated in the preparation and dissemination of a prospectus, plaintiffs are not expected to bear the burden of having to identify the role of each defendant in the fraud without the benefit of any discovery.

Defendants cite cases which hold that a director's actions may not be imputed to a company unless they were performed within the scope of his duties to that company; however, those cases were decided not on a motion to dismiss, but at subsequent stages of the proceedings, where plaintiffs had, as they have not here, a chance to offer evidence. *See Scientific Holding Co., Ltd. v. Plessey Inc.*, 510 F.2d 15, 20 (2d Cir.1974) (appeal from jury decision dismissing the action); *Etshokin v. Texasgulf, Inc.*, 612 F.Supp. 1220 (N.D.Ill.1985) (summary judgment); *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131 (3d Cir.1988) (summary judgment); *Weintraub v. Texasgulf, Inc.*, 564 F.Supp. 1466 (S.D.N.Y.1983) (summary judgment); *Fidelity Bank, Nat'l. Ass'n v. Avrutick*, 740 F.Supp. 222 (S.D.N.Y.1990) (summary judgment). Whether or not knowledge can be imputed in this fashion is a matter of fact that cannot be determined on a motion to dismiss.

### 2. *Scienter is Adequately Alleged*

■■■■ Not all elements of a fraud claim need be pled with equal particularity. Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *See Shields*, 25 F.3d at 1128. The Court of Appeals has held that "allegations of scienter ... are not subjected to the more exacting consideration applied to the other components of fraud." *Breard v. Sachnoff & Weaver, Ltd.*, 941 F.2d 142, 143 (2d Cir.1991) (quoting *Ouaknine*, 897 F.2d at 81). All that is required under Rule 9(b) is that there exist a "minimal factual basis for ... conclusory allegations of scienter." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir.1994) (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir.1987)). "In fact, conclusory allegations of scienter are sufficient 'if supported by facts giving rise to a "strong inference" of fraudu-

lent intent.'" *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir. 1993), *cert. denied*, ⸺ U.S. ⸺, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994) (quoting *Ouaknine*, 897 F.2d at 80). There are two independent ways to give rise to such an inference. A plaintiff may either (1) identify circumstances indicating conscious or reckless behavior by the defendants, or (2) allege facts showing both a motive for committing fraud and a clear opportunity for doing so. *Shields*, 25 F.3d at 1128; *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir.1989). The Complaints meet the first of these criteria, and scienter is, therefore, adequately alleged.

■■■■ The Moving Defendants assert that Plaintiffs fail to allege any facts indicating the requisite scienter. They contend that the Complaints lack facts evidencing their reckless or conscious misbehavior—that the allegations of knowledge and recklessness are merely conclusions. They note too that Plaintiffs must "supply a factual basis for their conclusory allegations" of knowledge, *see Ross*, 607 F.2d at 558, or recklessness. *See Chemical Bank v. Shearson Lehman Bros., Inc.*, 91 Civ. 4915 (LLM), 1992 WL 183760 at *2 (S.D.N.Y. July 21, 1992).

Yet given that all inferences must be drawn here in Plaintiffs' favor, *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990), and that, as noted above, only a minimal factual basis need exist for the conclusory allegations of scienter, the Complaints adequately allege scienter by alleging circumstances indicating conscious or reckless behavior by the defendants. Each of the Individual Defendants occupied a position with or had a relationship with his or her Company, and it could thus be inferred that each was privy to confidential, proprietary information concerning the Company. As senior officers, directors and shareholders, it could be inferred that the individual Defendants were aware of market manipulation by a controlling person, and the financial position of the controlling person. Although the inference of scienter presented by these facts is not terribly strong, it is sufficient to permit Plaintiffs, who have not yet had the benefit of discovery, to offer evidence to prove it.

*Shields,* 25 F.3d at 1128, is not to the contrary. In that case, the plaintiff alleged that the company's optimistic financial predictions had been fraudulently made. The Court noted that the plaintiff had failed to allege that the company's disclosures were incompatible with the most current company reports. Under these particular circumstances, allegations of knowledge failed to show any fraudulent intent because "misguided optimism is not a cause of action and does not support an inference of fraud." *Shields,* 25 F.3d at 1129. In contrast, Plaintiffs here allege that the Defendants were aware of actual facts, not merely predictions. *See also Sperber Adams Assocs. v. JEM Management Assocs. Corp.,* 90 Civ. 7405 (JSM), 1992 WL 138344 (S.D.N.Y. June 4, 1992) (allegations of knowledge or recklessness combined with allegations that defendants prepared false and misleading offering materials satisfy pleading requirements); *In re Gas Reclamation, Inc. Sec. Litig.,* 659 F.Supp. 493, 503 (S.D.N.Y.1987) (allegations of knowledge combined with factual allegations of misrepresentations and omissions give rise to an inference of knowledge or recklessness).

Because the Complaints allege fraud with sufficient particularity, the motions to dismiss pursuant to Rule 9(b) will be denied.

### III. *The Motions to Dismiss for Failure to State a Claim Will Be Denied*

#### A. *The Question of Materiality Cannot Be Resolved at This Juncture*

Section 11 imposes liability "in case any part of [a] registration statement ... contains an untrue statement of material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Similarly, Section 12(2) imposes liability for using a prospectus "which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading." 15 U.S.C. § 77l(a)(2).

Defendants seek dismissal for failure to state a claim on the grounds that none of the nondisclosures alleged by Plaintiffs is material: that there is no substantial likelihood that a reasonable investor would have viewed disclosure of the omitted facts as significantly altering the "total mix" of information made available. *TSC Indus. Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). This argument consists of two related prongs: first, that the alleged omissions in the complaint amount merely to inferences that might be drawn from material facts, and that inferences, unlike facts, need not be disclosed; second, that the alleged omissions amount merely to forecasts concerning Blech and Blech & Co., and that the securities laws do not require forecasts at all, much less those concerning third parties.

Certainly, as our Court of Appeals has noted, "[T]he disclosure requirements of the securities law require 'nothing more than the disclosure of basic facts so that outsiders may draw upon their own evaluative experience in reaching their own investment decisions with knowledge equal to that of the insiders.'" *Gulf & Western Indus. v. Great Atl. & Pac. Tea Co.,* 476 F.2d 687, 697 (2d Cir.1973) (quoting *Securities & Exch. Comm'n v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 849 (2d Cir.1968) (en banc), *cert. denied,* 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969)). Nor need a defendant disclose plaintiffs' "pejorative characterizations" of facts set out in its offering materials. *See, e.g., Hecco Ventures v. Avalon Energy Corp.,* 606 F.Supp. 512, 519 (S.D.N.Y.1985). And the securities laws do not require an issuer to forecast unforeseeable consequences. *See, e.g., Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 53 (2d Cir.1995).

Yet these arguments essentially beg the question of whether the alleged omissions meet the materiality element of Sections 11, 12 and 10(b). The issue of whether particular misrepresentations and omissions are material—whether consequences were foreseeable, whether inferences could be drawn, and whether certain facts were basic—are issues of fact inappropriate on a motion to dismiss. *See Joyce v. Joyce Beverages, Inc.,* 571 F.2d

703, 707 (2d Cir.), *cert. denied,* 437 U.S. 905, 98 S.Ct. 3092, 57 L.Ed.2d 1135 (1978).

Defendants contend further that they disclosed all information required by Regulation S–K, 17 C.F.R. § 229.500 *et seq.,* concerning their underwriters, noting that there is no allegation that they failed to meet those obligations. That regulation requires an issuer to identify each underwriter with a material relationship with the issuer and the nature of the relationship, the underwriter's obligation to take securities, the underwriter's compensation, the existence of any underwriter's representatives on the issuer's board of directors, and any indemnity provided to the underwriter. A new issuer must also disclose the nature of the underwriter's experience, and, in large, bold-face type, whether the underwriter will effect transactions to stabilize the price of the security and facilitate the offering and that such stabilization may be discontinued at any time. Each of the companies, the Moving Defendants argue, made all of these disclosures, thus belying Plaintiffs' assertions that the Registrations and Prospectuses were misleading for failing to identify Blech & Co.'s role in the market for their stock. Yet although there is no authority that Defendants were required to go beyond the Regulation S–K disclosures and investigate the financial health of Blech and Co. and David Blech, no authority suggests that Regulation S–K is preemptive of the materiality requirement.

■ Certain of the Moving Defendants argue that no Section 11 or Section 12 claims are stated, because those claims do not contain allegations of knowledge. Yet knowledge is not an element of a Section 11 or 12(2) claim. As noted above in discussing the applicability of Rule 9(b) to such claims, Sections 11 and 12(2) provide for strict liability, and only a material misstatement or omission need be shown to establish a *prima facie* case. *See* 15 U.S.C. §§ 77k(a), 77l(a)(2); *Herman & MacLean,* 459 U.S. at 381–82, 103 S.Ct. at 686–87; *Wilson,* 872 F.2d at 1126; *Capri,* 856 F.2d at 478.

### B. *The Complaint States a Section 11 Claim*

In arguing for dismissal of the Section 11 claims, the Moving Defendants assert that the issuers and the individual Defendants bore no obligation to investigate Blech, their underwriter, and that, indeed, imposing a duty on an issuer to investigate its underwriter would stand the securities law regime on its head.

■ An issuer of securities is strictly liable for material misrepresentation and omissions in its registration statement and prospectus under Section 11. *In re Ames Dept. Stores Inc. Stock Litig.,* 991 F.2d 953, 961 (2d Cir.1993). Unlike certain other Section 11 defendants, the issuer has no "due diligence" defense available. *Kronfeld v. Trans World Airlines, Inc.,* 832 F.2d 726, 730 (2d Cir. 1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988). The Moving Defendants do not cite, nor can this Court find, any authority setting out an exception to this rule with respect to underwriters for the securities in question.

### C. *The Complaint States a Section 12(2) Claim*

Certain of the Moving Defendants seek dismissal of the Section 12(2) claim by alleging that they were not statutory "sellers" for the purposes of the section. *See* 15 U.S.C. § 77l(2). Section 12(2) provides that:

> Any person who ... offers or sells a security ... by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading ..., shall be liable to the person purchasing such security from him....

*Id.*

■ Although the Securities Act does not define the term "seller", the Supreme Court clarified its meaning in *Pinter v. Dahl,* 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Under *Pinter* and its progeny, a person is a "seller" under Section 12(2) if it either: (1) transferred title to the securities at issue; or (2) actively solicited the sale of the securities with a motivation to serve his own financial interests or those of the securities owner. *See Commercial Union Assur.*

*Co. plc v. Milken,* 17 F.3d 608, 616 (2d Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 198, 130 L.Ed.2d 130 (1994), extending *Pinter* analysis from Section 12(1) to 12(2)); *Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 49 (2d Cir.1991), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

 Although certain Moving Defendants did not directly transfer the shares at issue, having sold them to Blech & Co. first, the Complaints allege facts sufficient to present the possibility that the Moving Defendants "actively solicited" the sale of the securities. Although signing the registration statement need not constitute active solicitation, *see Mabon, Nugent & Co. v. Borey,* 127 B.R. 727 (S.D.N.Y.1991), it is, at this stage of the proceedings, a sufficient allegation to permit Plaintiffs to present evidence that, alone or in tandem with other acts, the signatures constituted active solicitation, given that other courts have held involvement in preparation and circulation of the prospectus sufficient to show solicitation. *See, e.g., Capri,* 856 F.2d at 478. And although scienter must be pleaded when a plaintiff seeks to hold collateral participants liable under Section 12(2), *see, e.g., Akerman v. Oryx Communications, Inc.,* 810 F.2d 336, 344 (2d Cir.1987), whether or not the Moving Defendants were collateral participants is more appropriately a question for summary judgment.

### D. *The Complaint States a Controlling Person Claim*

Defendants seek to dismiss the controlling person claims, noting that it has been held that "status as an officer, director, or shareholder, absent more, is not enough to trigger [control person] liability." *Hemming v. Alfin Fragrances, Inc.,* 690 F.Supp. 239, 245 (S.D.N.Y.1988). Moreover, they note, this court has required a plaintiff to plead not only that the defendant had actual authority, but also that he "possessed actual control over the transactions in question." *Katz v. David W. Katz & Co.,* 82 Civ. 6383 (LBS), 1984 WL 2385 (S.D.N.Y. Feb. 14, 1984).

 Plaintiffs have, however, met the prevailing standard for establishing a *prima facie* showing of control person liability by pleading that the Individual Defendants each controlled a primary violator of the securities laws: the Companies. Any defense must be raised in their responsive pleadings. *Terra Resources I v. Burgin,* 664 F.Supp. 82, 88 (S.D.N.Y.1987). The Plaintiffs have gone beyond averring control by mere status, detailing each of the Individual Defendants' positions of control and authority as directors or executive officers of their respective companies, the terms of their public offerings, their underwriters, and the value and market for its securities; their ability to control the acts of their respective issuers; their control over the contents of the respective offering documents; their signatures thereon, and their failure to disclose material facts therein. Such allegations have been held to meet the standards for pleading control person liability. *See In re Par Pharmaceutical, Inc. Secs. Litig.,* 733 F.Supp. 668, 679–680 (S.D.N.Y. 1990); *Hemming,* 690 F.Supp. at 245; *Food & Allied Serv. Trades Dep't v. Millfeld Trading Co.,* 841 F.Supp. 1386, 1391 (S.D.N.Y. 1994); *Morse v. Weingarten,* 777 F.Supp. 312, 317–18 (S.D.N.Y.1991). Although the Moving Defendants present a viable case that certain of them, particularly Haber, an outside director who owned just 1.2 percent of the company's outstanding stock, cannot be deemed a control person, this is a matter of fact more appropriately decided on a motion for summary judgment than on a motion to dismiss.

### Conclusion

All arguments not explicitly addressed here have been considered and dismissed as unconvincing or irrelevant. For the reasons set forth above, the motion of the *TBC* Defendants for reconsideration of the Texas Order is granted. Its motion to dismiss and those of the other Moving Defendants are denied.

It is so ordered.